HAMILTON COUNTY ASSESSOR,
Petitioner,

v.

SPD REALTY, LLC, Respondent.

No. 49T10–1104–TA–28.

Tax Court of Indiana.

May 27, 2014.

Marilyn S. Meighen, Attorney at Law, Carmel, IN, Attorney for Petitioner.

Michael H. Michmerhuizen, Joshua C. Neal, Barrett & McNagny, LLP, Fort Wayne, IN, Attorneys for Respondent.

WENTWORTH, J.

The Hamilton County Assessor appeals the Indiana Board of Tax Review's final determination that SPD Realty, LLC's real and personal property qualified for a charitable purposes exemption for the 2009 tax year. The Court affirms.

## FACTS AND PROCEDURAL HISTORY

In May of 2008, J. Blàir Peebles, Duane and Marcia DuCharme, and Dr. Rajiv Sood formed New Life Generation, Inc., a public benefit corporation, pursuant to the Indiana Nonprofit Corporation Act of 1991. New Life's Articles of Incorporation state that it is organized for the charitable purpose of procuring tissue donors, performing tissue donor recoveries, and providing related donor services. The Articles further state that New Life provides transplantable skin tissue to burn centers and surgeons, educational services to certain agencies and organizations, and related research and development services to improve tissue and bone donation.

After New Life encountered difficulties renting a suitable space, its owners decided to purchase a property to accommodate New Life's tissue bank operations. On October 15, 2008, New Life's owners formed SPD, a for-profit limited liability company, and shortly thereafter, SPD purchased a 9,500 square foot office building and leased 5,000 square feet of the building to New Life for a 10–year period.[1]

Pursuant to the terms of the lease, New Life agreed to use the space for the exclusive purpose of operating a tissue bank and providing related services.[2] The lease also provided that New Life would pay an annual base rent equivalent to SPD's entire mortgage, all real and personal property taxes, and all of the build-out[3] and

---

1. Despite the terms of the lease, New Life actually used between 7,500 and 8,000 square feet of the building during the 2009 tax year.

2. At some point in 2010, Medigraft, LLC, a company also owned by the founders of New Life, leased another 450 square feet of the building for its bone grafting distribution business. Medigraft's use of the property is not at issue here, however, because SPD sought an exemption for 2009, the year prior to Medigraft's use of the building.

3. The build-outs included the installation of offices, cubicles, walls, a freezer, a clean area, and clean rooms (i.e., HEPA-filtered environ-

operating expenses. The lease stated that SPD, however, would cover the costs associated with the maintenance and repair of the building's exterior, the parking lot, and the landscaping.

On January 22, 2009, SPD filed an Application for Property Tax Exemption with the Hamilton County Property Tax Assessment Board of Appeals (PTABOA) requesting a charitable purposes exemption for the 2009 tax year. On August 6, 2009, the PTABOA denied SPD's application. SPD then appealed to the Indiana Board, an administrative hearing was held, and on March 11, 2011, the Indiana Board issued a final determination granting SPD's exemption application.

On April 13, 2011, the Assessor initiated this original tax appeal. The Court heard oral arguments on November 9, 2011. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Knox Cnty. Prop. Tax Assessment Bd. of Appeals v. Grandview Care, Inc.*, 826 N.E.2d 177, 180 (Ind. Tax Ct.2005). Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

ments that minimize the growth of hazardous

(5) unsupported by substantial or reliable evidence.

IND.CODE § 33–26–6–6(e)(1)–(5) (2014).

## LAW

■ Although all tangible property in Indiana is generally taxable, property that is owned, occupied, and predominantly used for a charitable purpose is exempt. *See* IND.CODE §§ 6–1.1–2–1, –10–16(a), –10–36.3 (2009). The exemption generally extends to the land on which an exempt building is situated and the personal property that is contained within. *See* I.C. § 6–1.1–10–16(c), (e). When the ownership, occupancy, and use of a property is not unified in one entity, as here, all the entities that own, occupy, and use the property must have their own charitable purpose. *See Hamilton Cnty. Prop. Tax Assessment Bd. of Appeals v. Oaken Bucket Partners, LLC,* 938 N.E.2d 654, 658–59 (Ind.2010); *Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs,* 686 N.E.2d 954, 959 (Ind. Tax Ct.1997), *review denied.*

■ A charitable purpose will be found to exist if "1) there is 'evidence of relief of human want ... manifested by obviously charitable acts different from the everyday purposes and activities of man in general'; and 2) there is an expectation of a benefit that will inure to the public by the accomplishment of such acts." *Grandview Care,* 826 N.E.2d at 182 (citation omitted). Indiana Code § 6–1.1–10–16 requires the showing of a charitable purpose to ensure that the benefit conferred by the exemption both relieves the government of a cost that it would otherwise bear and does not primarily serve a commercial profit motive. *See College Corner, L.P. v. Dep't of Local Gov't Fin.,* 840 N.E.2d 905, 908 n. 6 (Ind. Tax Ct.2006); *Sangralea Boys Fund,* 686 N.E.2d at 959.

materials on skin tissue).

## ANALYSIS

The Assessor has asked the Court to reverse the Indiana Board's final determination for three reasons. Specifically, the Assessor contends that the Indiana Board's final determination is contrary to law and unsupported by substantial evidence because 1) New Life did not occupy and use the property for a charitable purpose; 2) SPD did not own the property for a charitable purpose; and 3) the property was not predominately used for charitable purposes.

### 1.

■ In its final determination, the Indiana Board explained that it found that New Life occupied and used the property for a charitable purpose because the parties did not appear to dispute the issue. (*See* Cert. Admin. R. at 64.) Now, on appeal, the Assessor contends that this finding is erroneous because she indeed disputed the issue, and SPD's evidence showed that New Life merely operated a business that provided health services for a fee. (*See* Pet'r Br. 8–10; Oral Arg. Tr. at 7–12.) (*See also* Pet'r Reply Br. at 2–5 (arguing that SPD therefore failed to make a *prima facie* case that New Life occupied and used the property for a charitable purpose as required under Indiana Code § 6–1.1–10–16).)

It is well-established that exemption statutes are to be strictly construed against the taxpayer, and thus, the taxpayer bears the burden of proving that it is entitled to the exemption that it seeks. *Fraternal Order of Eagles # 3988, Inc. v. Morgan Cnty. Prop. Tax Assessment Bd. of Appeals*, 5 N.E.3d 1195, 1200 (Ind. Tax Ct.2014). Accordingly, a taxpayer must show that all the elements of the charitable purposes exemption have been met for the property to be exempt. *See id.* Nonetheless, when the parties agree that property is owned, occupied, and used for charitable

purposes, the taxpayer's burden to offer probative evidence as to each agreed upon element is obviated. *See Sangralea Boys Fund,* 686 N.E.2d at 955–60 (determining only whether a unity of ownership, occupancy, and use was required for exemption because the parties did not dispute that both the owner and occupant of the property had a charitable purpose). *See also, e.g., Freudenberg–NOK Gen. P'ship v. State Bd. of Tax Comm'rs,* 715 N.E.2d 1026, 1031 (Ind. Tax Ct.1999) (explaining that the parties' agreement on an obsolescence issue negated the taxpayer's burden to offer probative evidence on that issue), *review denied.* Consequently, the critical question here is whether the record supports the Indiana Board's finding that New Life occupied and used the property for a charitable purpose.

At the Indiana Board hearing, SPD argued that New Life had a charitable purpose and presented evidence that New Life recovers and distributes human tissue for medical purposes; that tissue donation relieves the human suffering and want of medical patients who need skin grafts, orthopedic, reconstructive, neurological, cardiovascular, and oral surgeries; and that in providing these services, New Life receives reimbursements that cover only its skin acquisition costs. (*See, e.g.,* Cert. Admin. R. at 104, 158–62, 326, 333–37.) SPD also presented evidence showing that prior to New Life's creation, the supply of transplantable human tissue and the number of tissue banks in Indiana was inadequate to meet demand. (*See* Cert. Admin. R. at 335–37.)

The Assessor's presentation, however, did not challenge SPD's claims regarding New Life's charitable purpose or present evidence to the contrary, but instead, focused primarily on whether *SPD* had a charitable purpose. (*See, e.g.,* Cert. Admin. R. at 181–229, 293–309, 353–70, 385–

406.) Moreover, the Assessor's opening statement that "[w]e are not in any way, shape, or form conceding that New Life uses or occupies th[e] property for an exempt purpose" did not put the issue in dispute. (*See* Cert. Admin. R. at 322–23.) Indeed, this statement alone, without supporting evidence and argument, is insufficient to create an actual dispute as to whether New Life had a charitable purpose because an opening statement generally is not substantive evidence; rather, it is designed to acquaint the fact-finder with the facts that a party intends to prove. *See Luphahla v. Marion Cnty. Sheriff's Dep't*, 868 N.E.2d 1155, 1158–59 (Ind.Ct. App.2007). Accordingly, there is substantial evidence to support the Indiana Board's finding that New Life occupied and used the property for a charitable purpose.

### 2.

The Indiana Board also determined that the totality of the evidence demonstrated that SPD owned the property for a charitable purpose. (*See* Cert. Admin. R. at 64–66.) The Assessor asserts, however, that the evidence regarding SPD's close relationship with New Life and its status as New Life's landlord contradicts this finding. (*See* Pet'r Br. at 10–11; Oral Arg. Tr. at 14–15.)

The evaluation of whether property is owned, occupied, and predominately used for a charitable purpose is a fact sensitive inquiry; there are no bright-line tests because every exemption case stands on its own facts. *Jamestown Homes of Mishawaka, Inc. v. St. Joseph Cnty. Assessor*, 914 N.E.2d 13, 15 (Ind. Tax Ct.2009), *review denied.* In this case, the administrative record reveals that the same individuals that created and own

New Life created and own SPD. (*See* Cert. Admin. R. at 106, 152–53, 329–30, 338–40.) In fact, SPD exists as an outgrowth of New Life because SPD was formed for the sole purpose of acquiring and renting the subject property to New Life in furtherance of its charitable tissue bank operations.[4] (*See* Cert. Admin. R. at 338–40.) In this instance, therefore, the evidence of the close relationship between these two entities does support the Indiana Board's finding that each has a similar charitable purpose. *See Amax Inc. v. State Bd. of Tax Comm'rs*, 552 N.E.2d 850, 852 (Ind. Tax Ct.1990) (stating that a final determination of the Indiana Board is supported by substantial evidence (*i.e.,* more than a scintilla of evidence) when a reasonable person could view the record in its entirety and find enough relevant evidence to support the Indiana Board's determination).

Nonetheless, the Assessor further contends that because SPD charges New Life above-market rent, SPD has a profit motive similar to that of commercial landlords, not a charitable purpose. (*See* Pet'r Br. at 10–11.) The record evidence reveals that SPD, unlike some commercial landlords, owns and rents just one property, the property it rents to New Life. (*See* Cert. Admin. R. at 340–41.) The evidence also shows that SPD has never enforced a provision in its lease with New Life that calls for annual rental increases. (*Compare* Cert. Admin. R. at 163 *with* 371.) Moreover, SPD's evidence reveals that the amount of rent it charged New Life was designed to cover just the mortgage costs and operational expenses, not to generate profits for SPD. (*See* Cert. Admin. R. at 341, 348–49, 371–72.) Finally, SPD explained that unlike a typical commercial landlord its owners paid the immediately

---

4. Indeed, New Life could not find a landlord that would allow it to retrofit a building for its tissue bank operations or that wanted a ten- ant that would be handling bio-hazardous materials on the premises. (*See* Cert. Admin. R. at 340.)

prior installment of property taxes from their own personal accounts because neither SPD nor New Life had sufficient funds to cover the liability. (*See* Cert. Admin. R. at 371–73.)

The totality of the evidence indicates that the arrangement between SPD and New Life was not a typical landlord-tenant relationship and that SPD did not have a profit motive. Thus, to the extent that the Assessor has invited the Court to reweigh the evidence in her favor, the Court must decline to do so. *See Grant Cnty. Assessor v. Kerasotes Showplace Theatres, LLC*, 955 N.E.2d 876, 883 (Ind. Tax Ct.2011) (providing that the Court may not reweigh the evidence nor judge the credibility of witnesses when reviewing the Indiana Board's final determinations). Therefore, the Court has no basis for reversing the Indiana Board's finding that SPD owns the property for a charitable purpose.

### 3.

Lastly, the Assessor claims that the Indiana Board's finding that SPD's property was predominately used for charitable purposes is contrary to law. More specifically, the Assessor argues that while New Life used the property for four months of the 2009 tax year, Indiana Code § 6–1.1–10–36.3 requires that the property be used for charitable purposes for more than half of that year. (*See* Oral Arg. Tr. at 15–18.) Accordingly, the Assessor argues that even assuming that SPD and New Life have a charitable purpose, the Indiana Board's final determination is contrary to law.

When the interpretation of a statute is at issue, the Court first looks to the plain language of the statute. *Charwood LLC v. Bartholomew Cnty. Assessor*, 906 N.E.2d 946, 949 (Ind. Tax Ct.2009). "When a statute is susceptible to more than one interpretation, it is ambiguous and the [C]ourt must interpret the statute to effectuate the intent of the legislature." *Howser Dev. LLC v. Vienna Twp. Assessor*, 833 N.E.2d 1108, 1110 (Ind. Tax Ct.2005) (citation omitted). In other words, the Court is not at liberty to construe an unambiguous statute. *Id.*

■ Indiana Code § 6–1.1–10–36.3(a) states that "property is predominantly used or occupied for [charitable] purposes if it is used or occupied for ... [those] purposes during more than fifty percent (50%) of the time that it is used or occupied in the year that ends on the assessment date of the property." I.C. § 6–1.1–10–36.3(a). This language clearly requires that a property be used or occupied for charitable purposes for more than 50% of the time that it is *actually used or occupied* during the tax year at issue. *See id.* Here, the evidence shows that in the four months the property was used and occupied, it was used 100% of the time for the charitable purpose of operating a tissue bank. Therefore, the Indiana Board's final determination that SPD's property was predominately used for charitable purposes is not contrary to law.

### CONCLUSION

For the above-stated reasons, the Indiana Board's final determination in this matter is AFFIRMED.