ATTORNEY FOR PETITIONERS:
**DUSTIN D. HUDDLESTON**
HUDDLESTON & HUDDLESTON
Franklin, IN

ATTORNEYS FOR RESPONDENT:
**MICHAEL H. MICHMERHUIZEN**
**JOSHUA C. NEAL**
BARRETT & McNAGNY, LLP
Fort Wayne, IN

# IN THE
# INDIANA TAX COURT

**FILED**
Apr 01 2015, 12:16 pm
*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| JOHNSON COUNTY PROPERTY TAX ASSESSMENT BOARD OF APPEALS and the JOHNSON COUNTY ASSESSOR,<br><br>Petitioners,<br><br>v.<br><br>KC PROPCO LLC d/b/a KINDERCARE LEARNING CENTER,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Cause No. 49T10-1112-TA-92<br>)<br>)<br>)<br>)<br>)<br>) |

## ON APPEAL FROM A FINAL DETERMINATION OF
## THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**April 1, 2015**

WENTWORTH, J.

In this case, the Court is asked to examine whether the Indiana Board of Tax Review erred when it determined that the real property of KC Propco LLC d/b/a KinderCare Learning Center (KC Propco) qualified for an educational purposes exemption for the 2009 tax year. The Court finds that the Indiana Board did not err.

**FACTS AND PROCEDURAL HISTORY**

KC Propco owns the Greenwood KinderCare facility located at 980 South State Road 135, Greenwood, Indiana. The property consists of a 6,959 square foot building and associated parking space situated on a 2.607 acre lot. (See Cert. Admin. R. at 12-13.)

In May of 2009, KC Propco filed an Application For Property Tax Exemption on the subject property, claiming it was entitled to the educational purposes exemption set forth in Indiana Code § 6-1.1-10-16 because it was owned, occupied, and used as an early learning center for children. (See Cert. Admin. R. at 7-9.) The application also sought to have the exemption extended to the personal property contained within the building. (See Cert. Admin. R. at 7.)

The Johnson County Property Tax Assessment Board of Appeals (PTABOA) denied the exemption application on November 15, 2009. KC Propco appealed the PTABOA's ruling to the Indiana Board.

**The Indiana Board Hearing: KC Propco's Case In Chief**

During the Indiana Board's July 7, 2011 hearing on the matter, KC Propco presented, among other things, the testimony of David Benedict and Connie Mortensen, employees of its parent company, the Knowledge Learning Corporation.[1] (See generally Cert. Admin. R. at 136-40, 327-29.) They explained that:

> KinderCare Learning Centers, formed in 1969, is a Delaware corporation that operates early education facilities throughout the country;
>
> In 2003, KinderCare Learning Centers formed KC Propco as its real estate acquisition and development arm;

---

[1] Benedict's testimony was presented via an affidavit. (See Cert. Admin. R. at 136-40, 433-34.)

In 2005, KC Propco acquired the subject property; KinderCare Learning Centers renovated the property in accordance with its specifications and has operated the facility as the Greenwood KinderCare since then;

That same year (i.e., 2005), KinderCare Learning Centers was acquired by Knowledge Learning Corporation;

Since 2005, KC Propco, KinderCare Learning Centers, and Knowledge Learning Corporation have all operated out of, and maintained the same corporate office in, Portland, Oregon.

(See, e.g., Cert. Admin. R. at 136, 330-31, 387-88, 396-401, 477-78, 489-91.) (See also Cert. Admin. R. at 185-235.) Mortensen testified that after 2005, KC Propco, KinderCare Learning Centers, and Knowledge Learning Corporation considered themselves to be "all the same." (See Cert. Admin. R. at 329-30, 387, 439, 472, 491-92.)

KC Propco also provided evidence about how the subject property was used in 2009. For example, between 8:30 a.m. and 4:30 p.m. each Monday through Friday, the Greenwood Kindercare administered both an accredited, age-appropriate curriculum for children under the age of five, as well as a state-licensed full-day kindergarten. (See, e.g., Cert. Admin. R. at 332-49, 358-67, 372, 395.) The teachers who administered these programs had credentials ranging from high school diplomas with field experience (i.e., previous employment at another early learning center or college-level early childhood classwork) to post-college early education coursework. (See Cert. Admin. R. at 141, 405-12.)

Generally, the pre-kindergarten curriculum was designed to develop and refine children's cognitive, motor, language, and computer skills. (See, e.g., Cert. Admin. R. at 101-02, 136-38, 360.) In addition, the curriculum was specifically tailored for each

3

child in attendance to address his specialized needs and level of development. (See, e.g., Cert. Admin. R. at 339, 342.) This basic pre-kindergarten curriculum was adjusted for the kindergarten students to incorporate programs based in reading, math, science, social studies, music, and physical fitness. (See Cert. Admin. R. at 138.) As a supplement to its core curriculum, the Greenwood Kindercare also offered daily enrichment courses in phonics, reading, math, music, and Spanish. (See Cert. Admin. R. at 102, 138, 357-58, 368-70.) Mortensen explained that because most local public school systems (for example, those located in Perry and Franklin Townships, Indianapolis) offered educational programs for three, four, and five year olds, the Greenwood Kindercare teaching staff would periodically meet with representatives from those public schools to compare curricula and to ensure that its programs coincided with theirs. (See Cert. Admin. R. at 139, 362-63, 380, 471.)

The Greenwood Kindercare also offered a before and after school care program. This program, offered from 6:00 a.m. to 8:30 a.m. and again from 4:30 p.m. to 6:00 p.m. each weekday, existed primarily for the convenience of parents of school-aged children. (See Cert. Admin. R. at 338, 395.) Nonetheless, educational goals and objectives were still emphasized during these times. For instance, the teaching staff assisted the children in attendance with their homework and organized club-like activities for them in the areas of math, science, and music. (See, e.g., Cert. Admin. R. at 102, 138, 466-67.) During the summer months, the Greenwood Kindercare offered educational camps and private tutoring sessions for school-aged children. (Cert. Admin. R. at 102, 138, 368-70.)

**The Indiana Board Hearing:  The Assessor's Rebuttal**

In response to KC Propco's evidentiary presentation, the Assessor asserted that because the subject property was owned by KC Propco, but occupied and used by Kindercare Learning Centers, each of those entities had to demonstrate its own exempt purpose before the subject property could be entitled to the exemption.  (See, e.g., Cert. Admin. R. at 326.)  The Assessor argued that KC Propco's limited liability agreement demonstrated that it did not own the subject property for an educational purpose because it merely stated that its purpose was "to acquire, own, develop, improve, and hold" the subject property.  (See Cert. Admin. R. at 189, 294, 476-479.)  The Assessor then argued that while there was an educational element to Kindercare Learning Center's use of the subject property, that element was incidental to the property's primary use as a childcare facility.  (See, e.g., Cert. Admin. R. at 295-96, 325.)  To support this argument, the Assessor presented KinderCare Learning Centers' Certificate of Incorporation which stated its purpose was "to be engaged in any lawful act or activity."  (See Cert. Admin. R. at 285, 484-86.)  The Assessor also pointed out that the enrollment agreements used by KinderCare Learning Centers specifically used the term "child care center."  (See Cert. Admin. R. at 89-94, 446-47.)  The Assessor reasoned that the subject property was primarily used "to provide a safe place for parents to send their children when [they] are at work or the public schools are closed." (Cert. Admin. R. at 296.)  Moreover, the Assessor theorized that if the subject property's primary use was educational, then KinderCare Learning Centers "would compete with or offer similar educational opportunities as a public school during school hours. [Instead, it has] concede[d] that children of school age can only attend the [p]roperty

5

before and after public school hours." (Cert. Admin. R. at 296.) (See also Cert. Admin. R. at 443-45.)

**The Indiana Board's Final Determination**

On November 2, 2011, the Indiana Board issued a final determination granting KC Propco's exemption application. In its final determination, the Indiana Board stated that while KC Propco owned the subject property and KinderCare Learning Centers used it, each entity had its own exempt purpose. (See Cert. Admin. R. at 40-41 ¶¶ 38-39.) Indeed, the Indiana Board stated that both entities "are affiliated and share common ownership by Knowledge Learning Corporation [and are therefore] integral parts of one operation." (Cert. Admin. R. at 40 ¶ 39.) Moreover, "KC Propco acquired the subject property for the specific purpose of operating an early learning center and the then existing improvements were specifically renovated, pursuant to plans approved by KinderCare [Learning Centers], exclusively for the purpose of facilitating [its] early learning programs." (See Cert. Admin. R. at 41 ¶ 39.) The Indiana Board finally held that the subject property's use as an "early learning center" was educational because all of the programs offered at the Greenwood KinderCare

> including programs for infants and children under the age of three, are a complement to and prepare children for enrollment in school by providing the foundational elements children need to thrive in more advanced programs. In other words, [these] programs were designed to prepare pre-school children for school and other parts of the curriculum mirrored programs taught in several local, public schools.

(Cert. Admin. R. at 43 ¶ 45.) The Indiana Board declined to extend the exemption to the personal property contained within the facility, however, because KC Propco provided no information or evidence whatsoever regarding that personal property. (See Cert. Admin. R. at 44 ¶ 49.)

6

On December 15, 2011, the Assessor and the PTABOA (collectively, the Assessor) initiated this original tax appeal. The Court heard oral argument on November 16, 2012, in the Richardson Chapel at Franklin College in Franklin, Indiana.[2]

## STANDARD OF REVIEW

As the party seeking to overturn the Indiana Board's final determination, the Assessor bears the burden of demonstrating its invalidity. See Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). To do so, the Assessor must demonstrate to the Court that the final determination is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) contrary to constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;
>
> (4) without observance of procedure required by law; or
>
> (5) unsupported by substantial or reliable evidence.

See IND. CODE § 33-26-6-6(e)(1)-(5) (2015).

## LAW

In Indiana, all tangible property is subject to taxation. See IND. CODE § 6-1.1-2-1 (2015). Nevertheless, the Legislature has determined that all or part of a building is exempt from property taxation if it is owned, occupied, and used for an educational purpose. See IND. CODE § 6-1.1-10-16(a) (2009). This exemption also extends to the land on which the building sits. I.C. § 6-1.1-10-16(c). When ownership, occupancy, and

---

[2] The Court wishes to thank the staff and students at Franklin College for their hospitality and Professor Alli Fetter-Harrott for scheduling the argument.

use of a property are not unified in one entity, each entity must demonstrate its own exempt purpose. See Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs, 686 N.E.2d 954, 959 (Ind. Tax Ct. 1997) (stating that to qualify for an exemption, a property must be owned for an exempt purpose, occupied for an exempt purpose, and used for an exempt purpose; "[o]nce these three elements have been met, regardless of by whom, the property can be exempt from taxation"), review denied.

The purpose of the educational purposes exemption "is to encourage non-governmental entities to provide educational services for 'the public welfare.'" Dep't of Local Gov't Fin. v. Roller Skating Rink Operators Ass'n, 853 N.E.2d 1262, 1265 (Ind. 2006) (citation omitted). See also State Bd. of Tax Comm'rs v. Ft. Wayne Sport Club, Inc., 258 N.E.2d 874, 881 (Ind. Ct. App. 1970) (explaining that education in its broadest sense "'comprehends the acquisition of all knowledge tending to develop and train the individual'" (citation omitted)). In order to qualify for the exemption, an applicant must show that through the use of its property it provides a benefit to the public sufficient to justify the loss in tax revenue. See Roller Skating Rink Operators Ass'n, 853 N.E.2d at 1265. An applicant can meet that burden by showing that it provides the public with either the same educational training that would otherwise be furnished by our tax-supported schools or that it provides educational courses that are related to those found in tax-supported public schools but not necessarily provided by them. Id.

**ANALYSIS**

**I.**

On appeal, the Assessor argues that the Indiana Board's final determination is not supported by the evidence for two reasons. First, it claims that there is no evidence

8

in the administrative record that establishes who owns, occupies, and uses the subject property. (See Pet'rs' Br. at 8-9.) Second, it claims that the evidence in the administrative record actually contradicts the Indiana Board's finding that the subject property was used for educational purposes. (See, e.g., Pet'rs' Br. at 11-19.)

**A.**

The Assessor claims that there is no evidence in the administrative record that establishes who owns, occupies, and uses the subject property. (See Pet'rs' Br. at 8-9.) Instead, it complains that KC Propco "only presented evidence of a confusing corporate structure of multiple entities that did not clearly establish who owned, occupied and used the property." (Pet'rs' Br. at 9.) In other words, the Assessor contends that the Indiana Board erred in relying on the testimonial statements of Mortensen and Benedict in making its finding that KC Propco owned the subject property and KinderCare Learning Centers occupied and used it because those testimonial statements were "full

9

of uncertainty and lacked substance."[3]  (See, e.g., Pet'rs' Reply Br. at 2-4 (footnote added).)  The Assessor's argument fails for the following two interrelated reasons.

First, it is well established that when this Court reviews a final determination of the Indiana Board, it may neither reweigh the evidence presented nor judge the credibility of the witnesses who testified at the Indiana Board's hearing.  See Freudenberg-NOK Gen. P'ship v. State Bd. of Tax Comm'rs, 715 N.E.2d 1026, 1030 (Ind. Tax Ct. 1999), review denied.  Thus, despite what the Assessor wants the Court to think about the quality of both Mortensen's and Benedict's testimony, the Court is limited as to what it can do when reviewing that evidence on appeal.  See id.  Indeed, because the Indiana Board understood their testimony and determined it had probative value, the Court will not overturn that determination absent an abuse of discretion.  See French Lick Twp. Tr. Assessor v. Kimball Int'l, Inc., 865 N.E.2d 732, 739 (Ind. Tax Ct. 2007).  To demonstrate an abuse of discretion, the Assessor needed to show the Court

---

[3]  For example, the Assessor asserts that Mortensen's testimony was confusing because the corporate relationships between KC Propco, KinderCare Learning Centers, and Knowledge Learning Corporation were "complex."  (See, e.g., Pet'rs' Br. at 9-10.)  The Assessor also asserts that Mortensen's testimony was contradictory because:  1) while she testified that KC Propco, KinderCare Learning Centers, and Knowledge Learning Corporation "were all the same," each entity actually had its own formation documents; and 2) while she stated that KinderCare Learning Centers paid rent to KC Propco, one in theory would not pay itself rent. (See Pet'rs' Br. at 9; Cert. Admin. R. at 185-286, 329-30, 387-88, 465.)  (But see Cert. Admin. R. at 392-93 (providing that no money actually exchanged hands, rather the rent "payment" was an internal accounting entry to assist in recognizing the profitability of the Greenwood KinderCare).)  Finally, the Assessor asserts that Mortensen's testimony was unreliable because she was an employee of Knowledge Learning Corporation "which is neither the owner or the occupier . . . or the use[r]" of the subject property.  (Oral Arg. Tr. at 8-9.)  With respect to Benedict's affidavit, the Assessor argues that it is not entitled to any weight because while he averred that he was familiar with the Greenwood KinderCare's operations and facilities in Marion County, Indiana, the property was actually located in Johnson County.  (Compare Cert. Admin. R. at 136 with Cert. Admin. R. at 2, 433-34 and Pet'rs' Reply Br. at 4.)  (But see Cert. Admin. R. at 435 (where the Indiana Board rejected this argument because it was evident that Benedict's sworn testimony went to the universal corporate operation of KinderCare Learning Centers and not just the Greenwood KinderCare).)

that there was probative evidence in the administrative record that affirmatively demonstrated that KC Propco did not own the subject property and that KinderCare Learning Centers did not occupy and use it. The Assessor has made no such showing. Rather, it has merely invited the Court to evaluate for itself the probative value of Mortensen's and Benedict's testimony.

Second, an Indiana Board final determination is supported by substantial evidence "if a reasonable person could view the record in its entirety and find enough relevant evidence to support [the decision]." Amax Inc. v. State Bd. of Tax Comm'rs, 552 N.E.2d 850, 852 (Ind. Tax Ct. 1990). Here, even looking beyond Mortensen's testimony and Benedict's affidavit, the Court finds that there is enough other evidence in the administrative record that would lead a reasonable mind to conclude that KC Propco owned the subject property and that KinderCare Learning Centers occupied and used it. (See, e.g., Cert. Admin. R. at 12 (indicating that the Assessor's own property record card listed KC Propco as the owner of the subject property), 304-524 (demonstrating that during the Indiana Board hearing, it was never once disputed that the Greenwood KinderCare was operated out of the subject property).) Thus, the Indiana Board's final determination will not be reversed on this basis.

**B.**

The Assessor also argues on appeal that the Indiana Board's finding that the subject property was used for educational purposes is not supported by evidence. Indeed, it argues that the evidence in the administrative record actually supports an "alternative conclusion." (See, e.g., Pet'rs' Reply Br. at 5.) For instance, the Assessor again points to the fact that the corporate documents for both KC Propco and

11

KinderCare Learning Centers do not explicitly state that their purposes are educational. (See Pet'rs' Br. at 11-12.) The Assessor also explains that KC Propco admitted during the Indiana Board hearing that between 8:30 and 4:30, certain non-educational activities occurred: children were fed (breakfast, lunch, and two snacks) and allowed to have quiet time[4], and with respect to the infants and toddlers, time was spent "changing diapers, wiping noses, [and] tying shoes[.]" (See Pet'rs' Br. at 13.) The Assessor also points to the fact that in 2009, only 25% of Greenwood KinderCare's teaching staff held college degrees. (See Pet'rs' Br. at 15.) Finally, the Assessor explains that KC Propco failed to provide any evidence to corroborate Mortensen's testimony that (1) the Greenwood KinderCare's teachers met with local public school officials to compare curricula and (2) the Greenwood KinderCare's programs mirrored those offered in local public schools. (See, e.g., Pet'rs' Br. at 15; Oral Arg. Tr. at 15, 19.)

The Assessor's argument fails because it essentially requests the Court to reweigh the evidence that was presented to the Indiana Board during its administrative hearing. In its final determination, the Indiana Board acknowledged that some non-educational activities did in fact occur at the Greenwood KinderCare, but that those activities did not diminish the property's overall educational use. Indeed,

> it is clear that both educational programs and child care activities take place at the Greenwood KinderCare. From [KC Propco's] point of view, the educational programs are the focus and the child care activities are merely incidental. The [Assessor], of course, views the child care activities as the focus and the educational programs as incidental. Ultimately, in this case [KC Propco's] point of view is more persuasive. The weight of the evidence establishes that the use of the subject property is most accurately characterized as

---

[4] KC Propco indicated during the Indiana Board hearing that "quiet time" did not necessarily mean nap time; rather, it meant that children were given time outside of the group dynamic to "recharge." (See Cert. Admin. R. at 372.)

12

educational. The exemption for the real property should not be denied based on the incidental child care activity that necessarily takes place due to the ages of the children.

(Cert. Admin. R. at 43-44 ¶ 47.)

Here, it is clear that the Assessor simply disagrees with how the Indiana Board distributed the weight of the evidence. Nonetheless, the Court will not now redistribute the weight in order to tip the scales in the Assessor's favor. See Freudenberg-NOK, 715 N.E.2d at 1030. Consequently, the Indiana Board's final determination will not be reversed on this basis either.

**II.**

Finally, the Assessor argues that the Indiana Board's final determination is arbitrary and capricious because it extended the educational purposes exemption to all 2.607 acres of KC Propco's land. More specifically, the Assessor asserts that while the one acre of land on which the subject property's building and parking lot actually sit may well be exempt, KC Propco failed to prove that the other 1.607 acres – which were vacant – were entitled to the exemption. (See generally Cert. Admin. R. at 12; Pet'rs' Br. at 19-21; Pet'rs' Reply Br. at 8-10; Oral Arg. Tr. at 6, 21-26.)

As previously noted, when a building is exempt from property taxation because it is owned, occupied, and used for an educational purpose, the exemption also extends to the land upon which it sits. I.C. § 6-1.1-10-16(c). KC Propco's building sits on a 2.607 acre parcel of land. (See Cert. Admin. R. at 12.) That entire parcel is exempt, not just the land attributable to the building's footprint. See I.C. § 6-1.1-10-16(c). See also DeKalb Cnty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010) (explaining that the Court will read statutes logically and in

13

such a way as to prevent an absurd result). The Court will therefore not reverse the Indiana Board's final determination on this basis.

## CONCLUSION

For all the above-stated reasons, the Court hereby AFFIRMS the Indiana Board's final determination in this matter.