ATTORNEY FOR PETITIONER:
**JONATHON T. COOK**
SANSBERRY DICKMANN BUILTA & COOK
Anderson, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**REBECCA L. McCLAIN**
**WINSTON LIN**
**ALEKSANDRINA P. PRATT**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Nov 07 2019, 4:07 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

|  |  |
|---|---|
| McCLAIN MUSEUM, INC., | ) |
| Petitioner, | ) |
| v. | ) Cause No. 18T-TA-00001 |
| MADISON COUNTY ASSESSOR, | ) |
| Respondent. | ) |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**November 7, 2019**

WENTWORTH, J.

McClain Museum, Inc. challenges the final determination of the Indiana Board of Tax Review holding that its real property did not qualify for either the educational purposes exemption or the charitable purposes exemption for the 2014 tax year. Upon review, the Court affirms in part and reverses in part the Indiana Board's final determination.

**FACTS AND PROCEDURAL HISTORY**

The McClain Museum, located in Anderson, Indiana, exhibits military equipment that was used by the United States' armed forces in various conflicts ranging from World War I through Desert Storm. (See, e.g., Cert. Admin. R. at 98, 102, 151-64, 191-257, 1054-55, 1404-13.) Founded in 1989 by Joseph McClain, a local Vietnam War veteran, the Museum was established as an Indiana not-for-profit corporation and granted an exemption from federal income taxation pursuant to IRC § 501(c)(3). (See Cert. Admin. R. at 99, 118-19, 1044, 1092.) The Museum's purpose, as stated in its Bylaws, is:

(1) To acquire and conserve motorized and non-motorized vehicles and equipment for historical preservation.
(2) To exhibit the collection of vehicles and equipment for purpose of educating visiting public.
(3) To collect, restore and exhibit military armored equipment.
(4) To conduct research in the area of motorized and non-motorized vehicles and equipment and collect information for future preservation.
(5) To acquire, rebuild, and rent vehicles and equipment for public use and display.
(6) Establish a facility for display of vehicles and equipment.
(7) To acquire and conserve historical items of Madison County's industrial and manufacturing history for an in-house, outreach and traveling exhibits.
(8) To use the historical collection to educate and preserve Madison County's natural and cultural history and technological accomplishments.
(9) To use the collection for scholarly research.
(10) Solely in furtherance of the aforesaid purposes to transact any and all lawful business for which a not-for-profit corporation may be incorporated under the Indiana Business Corporation Law, provided such business is not inconsistent with the corporation being organized and operated exclusively for charitable, educational, vocational and scientific purposes.

(Cert. Admin. R. at 102.) The Museum is recognized by the United States Army as a historical preservation site for military equipment. (See Cert. Admin. R. at 135, 1066-74.)

The Museum's property consists of two buildings and a parking lot situated on approximately 18 acres of partially wooded land. (See, e.g., Cert. Admin. R. at 150-90,

2

699-700.)  The larger of the two buildings, at approximately 88,600 square feet, is divided into several discrete sections:

> (1) an exhibition area and library where retired military tanks, vehicles, equipment, artillery-related items, uniforms, photographs, manuals and books are displayed for public viewing;[1]
>
> (2) a restoration area where military vehicles are serviced, repaired and maintained;
>
> (3) a storage area where exhibit items and excess vehicle parts are housed when not on display or in use;
>
> (4) a reception/meeting hall known as the "Officer's Club."

(See, e.g., Cert. Admin. R. at 150, 191-340, 1124-28, 1198-99, 1315-19.)  (See also generally Cert. Admin. R. at 1194-1233 (testimony describing the approximately 200 photographs of the subject property).)  The smaller building, at approximately 5,400 square feet, is used entirely for military vehicle storage.  (Cert. Admin. R. at 150.)  (See also Oral Arg. Tr. at 3.)

During the year at issue, the Museum was open to the general public Wednesday through Friday from 1 p.m. to 4 p.m.  (See Cert. Admin. R. at 567, 662-63.)  Nevertheless, the Museum was open upon request and guided tours were available by appointment.  (See Cert. Admin. R. at 567, 662-63, 1093-94, 1375.)  Guided tours were conducted for various veterans groups, school groups, scouting groups, police groups, and groups interested in military communications.  (See, e.g., Cert. Admin. R. at 567, 1370-77.)  With

---

[1] McClain loaned several rebuilt tanks and retired military vehicles from his own personal collection to the Museum when it first opened.  (See Cert. Admin. R. at 1100-03.)  In 2014, however, all but one of the military vehicles exhibited at the Museum were on loan from either the federal government or other individuals' private collections.  (See, e.g., Cert. Admin. R. at 143-49, 1065-67, 1164-65.)  Uniforms and other military-related mementos and paraphernalia were typically on loan to the Museum from the private collections of local individuals.  (See Cert. Admin. R. at 1079.)

volunteer participation, the Museum also performs military reenactments for the public using some of its equipment and vehicles. (See Cert. Admin. R. at 1381-83.)

To make it economically accessible to all, the Museum did not charge admission fees during the year at issue; it did, however, accept donations.[2] (Cert. Admin. R. at 1057, 1078, 1080.) (But see Cert. Admin. R. at 1388-89 (indicating that while the Museum sought a small admission fee for scheduled guided tours, it nonetheless waived the fee for those who could not afford to pay).) To defray some of its operating costs,[3] the Museum rented out a portion of its storage area (comprising approximately 9% of the larger building's total square footage) to individuals to store their boats. (See, e.g., Cert. Admin. R. at 150, 341-68, 1033, 1095-97, 1181-88, 1190-93, 1282-83.) Moreover, the Museum rented out the Officer's Club for social events like wedding receptions and parties, as well as to Yellowbook Inc. to store its Yellow Pages books. (See, e.g., Cert. Admin. R. at 150, 369-448, 1033, 1193-94, 1238-41, 1245-51, 1282-83, 1309-14, 1357-58.) In addition, the Museum also permitted the Anderson and Madison County Historical Societies to house, free-of-charge, some of their exhibits that they did not have room to store themselves. (See Cert. Admin. R. at 150, 1086, 1189-90 (indicating that the societies occupied approximately 1,100 square feet of the Museum's storage space, or approximately 1% of the Museum's total square footage).)

Apart from its bookkeeper, the Museum employed and paid only one staff member,

---

[2] The founder of the Museum often made substantial donations to cover the Museum's operating costs. (See Cert. Admin. R. at 1083-84, 1252-53, 1258-60.)

[3] Once the federal government approved the Museum's application to receive a vehicle on loan, the Museum was required to cover all subsequent costs associated with transporting, restoring, maintaining, and securing the vehicles. (See Cert. Admin. R. at 1068-74, 1077.)

a facilities manager. (Cert. Admin. R. at 1361-62.) That person performed the restoration work on the military equipment, conducted tours, and provided round-the-clock security services. (Cert. Admin. R. at 1361-64, 1367, 1370.) (See also Cert. Admin. R. at 1070, 1076-77, 1362-63, 1387-88 (indicating that given the stringent security measures the Museum had to take to protect the vehicles that were on loan from the government, the facilities manager lived on the premises).) Nevertheless, numerous unpaid volunteers, along with Joseph McClain and his daughter Melissa, assisted with the day-to-day operation of the Museum. (See, e.g., Cert. Admin. R. at 1380-87.)

In May of 2014, the Museum applied for the educational purposes exemption provided for in Indiana Code § 6-1.1-10-16. (See, e.g., Cert. Admin. R. at 37-41.) The Madison County Property Tax Assessment Board of Appeals denied the exemption application. (Cert. Admin. R. at 46-47.) The Museum subsequently appealed to the Indiana Board, claiming entitlement to both the educational purposes exemption and the charitable purposes exemption. (See Cert. Admin. R. at 4-5.)

The Indiana Board held a hearing on the Museum's appeal on June 11, 2015. On November 21, 2017, the Indiana Board issued its final determination in which it found that the Museum's real property did not qualify for either exemption.[4] (Cert. Admin. R. at 923-59.)

On January 5, 2018, the Museum initiated an original tax appeal. The Court heard the parties' oral arguments on April 11, 2019. Additional facts will be supplied when

---

[4] In its final determination, the Indiana Board also stated that while the Museum also sought an exemption for its personal property, it failed to specifically identify through either its evidence or argument what personal property it claimed to be exempt. (See Cert. Admin. R. at 950 ¶ 54 n.3.) Given that the certified administrative record does not contain information about personal property on appeal, the Indiana Board's final determination with respect to this issue stands.

necessary.

## STANDARD OF REVIEW

The party challenging an Indiana Board final determination bears the burden of demonstrating its invalidity. See Johnson Cty. Prop. Tax Assessment Bd. of Appeals v. KC Propco LLC, 28 N.E.3d 370, 374 (Ind. Tax Ct. 2015). Accordingly, the Museum must demonstrate to the Court that the Indiana Board's final determination is either arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2019).

## LAW

In Indiana, all tangible property is subject to taxation. IND. CODE § 6-1.1-2-1 (2014). Nevertheless, the Indiana Constitution provides that the Legislature may exempt certain categories of property from taxation. See IND. CONST. art X, § 1. Pursuant to that grant of authority, the Legislature enacted Indiana Code § 6-1.1-10-16, which exempts real and personal property that is owned, occupied, and used for, among other things, an "educational" or "charitable" purpose. See generally IND. CODE § 6-1.1-10-16(a), (c), (e) (2014).

Determining whether an exemption applies is a fact-sensitive inquiry. Hamilton Cty. Assessor v. SPD Realty, LLC, 9 N.E.3d 773, 777 (Ind. Tax Ct. 2014). The taxpayer has the burden to prove entitlement to an exemption by providing evidence that meets every element of the exemption sought. See Fraternal Order of Eagles # 3988, Inc. v.

6

Morgan Cty. Prop. Tax Assessment Bd. of Appeals, 5 N.E.3d 1195, 1200 (Ind. Tax Ct. 2014). Any ambiguity will be strictly construed in favor of taxation and against exemption. Hamilton Cty. Prop. Tax Assessment Bd. of Appeals v. Oaken Bucket Partners, LLC, 938 N.E.2d 654, 657 (Ind. 2010).

**ANALYSIS**

On appeal, the Museum argues that the Indiana Board's determination to deny it the educational purposes exemption or the charitable purposes exemption must be reversed because it constitutes "an abuse of discretion and [is] otherwise not in accordance with [the] law." (See, e.g., Pet'r Br. at 15-16, 18, 20, 29.) The Madison County Assessor, however, contends that the Indiana Board's final determination must be affirmed because the Museum "has failed to show that its contribution to the Madison County community justifies the loss of tax revenue" sufficient to award either exemption. (See, e.g., Resp't Br. at 5.)

The Educational Purposes Exemption

The educational purposes exemption is designed "'to encourage non-governmental entities to provide educational services for 'the public welfare.'" Dep't of Local Gov't Fin. v. Roller Skating Rink Operators Ass'n, 853 N.E.2d 1262, 1265 (Ind. 2006) (citation omitted). In order to qualify for the exemption, an applicant must show that through the use of its property it provides a benefit to the public sufficient to justify the loss in tax revenue. See id. The Indiana Supreme Court has explained that an applicant can meet that burden by showing that it provides the public with either the same educational training that would otherwise be furnished in Indiana's tax-supported schools or that it provides educational courses that are related to those found in tax-supported

7

public schools, but not necessarily provided by them.  Id.

The Museum argues on appeal that the Indiana Board clearly erred in its denial of the educational purposes exemption because military history "is both directly and indirectly related to subjects taught at our tax supported schools[.]"  (Pet'r Br. at 19.) Indeed, the Museum continues, military history

> is an integral part of the curriculum in Indiana's local state funded elementary and secondary schools as well as the State supported institutions of higher learning[.]  Wars, and specifically the U.S. involvement in those wars, take center stage in subjects like Social Studies, U.S. History, Government, and Western Civilization. Moreover, the affects [sic.] of those wars are tangentially apart [sic.] of other subjects such as Economics, American Literature, Philosophy and Political Science[.] . . . There is no question that war, and the way those specific wars were fought, is taught in various subjects offered in the curriculum at Indiana colleges, universities and tax supported public elementary and secondary schools, and . . . is at least "related" to those courses.

(Pet'r Br. at 18-19.)

In finding that the Museum did not qualify for the educational purposes exemption, the Indiana Board explained that

> [t]he McClain Museum is not a school.  It does not offer courses on historic preservation or military history.  [It] has made no showing of "instruction and training equivalent to that provided by tax-supported institutions of higher learning and public schools."  [It] offered no evidence of any type of curriculum or teaching plan.

(Cert. Admin. R. at 954 ¶ 64 (internal citation omitted).)  Upon review, the Court will not disturb the Indiana Board's finding.  While there is no doubt that the public is educated and its knowledge enhanced about military history through the Museum's displays, the Museum has nonetheless made no showing – as is required by the aforementioned case law – that it conducts educational services, training, or coursework related to that topic. (See generally Cert. Admin. R.)  Moreover, the Museum has made no showing that the

8

state's burden to provide military history education is relieved or would be increased if it were not for the Museum. (See generally Cert. Admin. R.) Consequently, the Indiana Board's final determination that the Museum's property did not qualify for the educational purposes exemption is affirmed.

## The Charitable Purposes Exemption

With respect to this exemption, the term "charitable purpose" is defined and understood in its broadest constitutional sense. Starke Cty. Assessor v. Porter-Starke Servs., Inc., 88 N.E.3d 814, 817 (Ind. Tax Ct. 2017). Generally speaking, a charitable purpose will be found to exist when "1) there is evidence of relief of human want . . . manifested by obviously charitable acts different from the everyday purposes and activities of man in general; and 2) there is an expectation of a benefit that will inure to the public by the accomplishment of such acts." SPD Realty, 9 N.E.3d at 775 (internal quotation marks omitted).

In denying the Museum a charitable purposes exemption, the Indiana Board stated that

> The McClain Museum is named after the owner of the original collection, and it appears that he and his daughter run the place as they see fit. . . . While the facilities are regularly open to the public, it is predominately used by a select number of persons who utilize the facility for storing and maintaining equipment. The record does not indicate significant efforts to advertise to the public or increase the number of visitors.

> * * * *

> We conclude that more than anything the McClain Museum is focused on Mr. McClain's hobby, collecting items related to military history. The totality of the evidence shows that whatever public benefits might result are merely incidental to that main focus.

> * * * *

9

In the context of property tax exemption, "human want" is not just human desire, but a need based on lack of a vital necessity. "Charity" is not explicitly defined by statute, but the Tax Court has defined it in part as an attempt to advance mankind in general, or those in <u>need</u> of advancement and benefit in particular. [While the Indiana Board finds the Museum's] efforts in regard to veterans are certainly charitable and relieve human want . . . these activities are . . . incidental relative to the overall use of the property.

(Cert. Admin. R. at 953-55 ¶¶ 60-61, 66 (internal citation omitted).) Now, on appeal, the Museum argues that the Indiana Board's stated rationale fails "to properly interpret and ultimately apply" the terms "charity" and "human want." (<u>See</u> Pet'r Br. at 8-11.) The Court agrees.

As previously stated, the term "charity" is to be broadly construed and thus encompasses more than simply providing relief to the needy. To that end, this Court has defined charity as:

a gift for, or institution engaged in, public benevolent purposes. [It is a]n attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources and without hope or expectation, if not with positive abnegation, of gain or profit by donor or by instrumentality of charity.

<u>Raintree Friends Hous., Inc. v. Indiana Dep't of State Revenue</u>, 667 N.E.2d 810, 813-14 (Ind. Tax Ct. 1996) (citation omitted). Moreover, the Court has also explained that "'charity is not confined solely to the relief of the needy and destitute, but comprehends as well activities which are humanitarian in nature and rendered for the general improvement and betterment of mankind[.]'" <u>College Corner, L.P. v. Dep't of Local Gov't Fin.</u>, 840 N.E.2d 905, 909 (Ind. Tax Ct. 2006) (citation omitted). And as the Indiana Court of Appeals has recognized,

10

> [a] purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity. There is no fixed standard to determine what purposes are of such social interest to the community; the interests of the community vary with time and place.

State Bd. of Tax Comm'rs v. Methodist Home for the Aged of the Indiana Conference of the Methodist Church, Inc., 241 N.E.2d 84, 89 (Ind. Ct. App. 1968) (citation omitted).

With this in mind, it is clear that through the Museum's ownership, occupation, and use of its property, it conveys a gift for the benefit of the general public that is charitable in nature. Indeed, the Museum provides a place where members of the general public can learn about our country's military history and heritage as well as pay homage to its veterans and their families for the sacrifices they made in defending our freedoms. (See, e.g., Cert. Admin. R. at 138-40, 142, 255, 528, 1390-92.) At the Museum, visitors can view actual helicopters, tanks, and artillery equipment and understand how they were operated. (See, e.g., Cert. Admin. R. at 155-64, 206-07, 213, 1405-13.) From other exhibits and displays, visitors can learn how members of our military were trained, uniformed and learn how important battles were fought. (See, e.g., Cert. Admin. R. at 191, 196-200, 208-12, 222-55.) Many of the Museum's war mementos and paraphernalia on display belong to local persons who served in our armed forces. (See, e.g., Cert. Admin. R. at 1079, 1165.) The Museum provides the public with access to its library of books and manuals for use in their own military research or restoration work. (See, e.g., Cert. Admin. R. at 1124-28.) All of these activities enhance the public's knowledge and understanding of a part of the American experience. In this way, the Museum's use "comprehends . . . activities which are humanitarian in nature and rendered for the general

11

improvement and betterment of mankind" and thus qualifies it for a charitable exemption.

See College Corner, 840 N.E.2d at 909 (citation omitted).

<u>Property Use Supports Less Than a 100% Exemption</u>

Because the Museum property is used for both exempt and non-exempt purposes,

Indiana Code § 6-1.1-10-36.3 instructs how the charitable purposes exemption is to be

applied. It provides in relevant part:

> (a) For purposes of this section, property is predominantly used or occupied for [a charitable purpose] if it is used or occupied for [a charitable purpose] during more than fifty percent (50%) of the time that it is used or occupied in the year that ends on the assessment date of the property.
>
> (b) The determination under subsection (c) of:
>     (1) the use or occupation of the property; and
>     (2) the application of an exemption;
> applies separately to each part of the property identified under I.C. 6-1.1-11-3(c)(5).
>
> (c) If a section of this chapter states one (1) or more purposes for which property must be used or occupied in order to qualify for an exemption, then the exemption applies as follows:
>     (1) Property that is exclusively used or occupied for [a charitable purpose] is totally exempt[;]
>     (2) Property that is predominantly used or occupied for [a charitable purpose] by a church, religious society, or not-for-profit school is totally exempt[;]
>     (3) Property that is predominantly used or occupied for [a charitable purpose] by a person other than a church, religious society, or not-for-profit school is exempt . . . on the part of the assessment . . . . that bears the same proportion to the total assessment of the property as the amount of time that the property was used or occupied for [the charitable purpose;]
>     (4) Property that is predominantly used or occupied for a purpose other than one (1) of the stated purposes is not exempt from any part of the property tax.

IND. CODE § 6-1.1-10-36.3(a)-(c) (2014).

The Museum's exhibition area, restoration area, and the majority of its storage area are all exclusively used for its charitable purpose.[5]  Accordingly, those spaces are entitled to a 100% exemption.  See I.C. § 6-1.1-10-36.3(a)-(c)(1).  Nonetheless, the Museum used specific portions of its storage space and its Officer's Club for the non-charitable activities of boat storage, Yellowbook storage, and non-Museum related social events.  See supra at p. 4.  To exempt those spaces, the Museum was required to present evidence demonstrating that they were used for exempt purposes more than they were used for non-exempt purposes.  See, e.g., Hamilton Cty. Assessor v. Duke, 69 N.E.3d 567, 570 (Ind. Tax Ct. 2017) (citing both I.C. § 6-1.1-10-36(a) and State Bd. of Tax Comm'rs v. New Castle Lodge #147, Loyal Order of Moose, Inc., 765 N.E.2d 1257, 1262-63 (Ind. 2002)), review denied).)

The Museum's evidence demonstrates that approximately 9% of its total square footage was used to store boats seven months out of the year.  (See, e.g., Cert. Admin. R. at 150, 341-68, 1182-88, 1190-93.)  As a result, that space was not predominately used for charitable purposes during 2014 and therefore ineligible for an exemption.  See I.C. § 6-1.1-10-36.3(a)-(c).  The Museum's evidence also indicates that during the year at issue, the Officer's Club, which occupies 15% of the Museum's total square footage, was rented "somewhere between" 14 and 28 times for social events and to store yellow

---

[5] In its final determination, the Indiana Board concluded that the Museum's property is "much larger than necessary to support the museum[.]"  (Cert. Admin. R. at 951 ¶ 57.)  This conclusion is not, however, supported by the evidence in the certified administrative record.  (See, e.g., Cert. Admin. R. at 162-80, 206-07, 215-22 (all indicating how large the vehicles are), 1116 (indicating that exhibits are periodically rotated and thus, when not on display, vehicles had to be stored), 1378-81 (indicating the amount of space necessary to move and/or disassemble large vehicles like tanks), 1382-83 (indicating that reenactments using the large motorized vehicles were conducted outside on the grounds).)

pages for approximately one month. (See, e.g., Cert. Admin. R. at 150, 372-73, 441-48, 1193-94, 1245-51, 1309-14, 1357-58.) That evidence does not demonstrate that the Officer's Club was predominately used for any charitable purposes. Finally, the Museum's evidence indicates that the Anderson and Madison County Historical Societies used approximately 1% of the Museum's total square footage, free-of-charge, for its own storage. (See Cert. Admin. R. at 150, 1086, 1189-90.) Again, without anything more, the Court cannot find that the space was predominately used for a charitable purpose.

## CONCLUSION

For the foregoing reasons, the Indiana Board's final determination that the Museum's property did not qualify for an educational purposes exemption is AFFIRMED. The Indiana Board's final determination that the Museum's property did not qualify for a charitable purposes exemption, however, is REVERSED. The evidence contained in the administrative record supports the Court's finding that the Museum's property is eligible for a 75% exemption.[6] The matter is therefore REMANDED to the Indiana Board to ensure that the Madison County Assessor complies with the Court's instructions contained in this opinion. See, e.g., Switzerland Cty. Assessor v. Belterra Resort Indiana, LLC, 130 N.E.3d 672, 675-76 (Ind. Tax Ct. 2019).

---

[6] The Museum has argued that because its property received a 100% exemption in 1996, collateral estoppel mandates that it receive the same exemption now. (See Pet'r Br. at 31-34.) The Court rejects this argument. See, e.g., Hamilton Cty. Assessor v. SPD Realty, LLC, 9 N.E.3d 773, 777 (Ind. Tax Ct. 2014) (explaining that determining whether an exemption applies is a fact-sensitive inquiry); Fleet Supply, Inc. v. State Bd. of Tax Comm'rs, 747 N.E.2d 645, 650 (Ind. Tax Ct. 2001) (indicating that each assessment year, and thus each exemption request, stands alone), review denied.