**CARR ENTERPRISES, INC., a Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 80–3063.

United States District Court, D. South Dakota, C. D.

May 20, 1982.

J. W. Grieves, Grieves & Rahn, Winner, S. D., for plaintiff.

Lawrence E. Meuwissen, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., Dawn Bowen, Asst. U. S. Atty., Pierre, S. D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

Plaintiff, a South Dakota corporation, brought this case [1] as a quiet title action, contending that the federal tax liens on property owned by plaintiff were invalid because the liens—based on tax assessments against plaintiff's principal stockholders— were created after its stockholders had transferred the property to plaintiff. Defendant United States asserted a counterclaim, seeking to have the transfer of the property to plaintiff by its stockholders declared a fraudulent conveyance under South Dakota law. Having considered the evidence presented at trial, and the briefs of the parties, the Court must rule that the filing of the lien did not deprive the stockholders of due process of law, that the transfer of the property to plaintiff was a fraudulent conveyance, and that the federal tax liens on the property are valid.

### FACTS

In September 1975, Gene and Frances Carr purchased the Buffalo Trail Motel, the property here in dispute, in Winner, South Dakota, on a contract for deed. At the same time, the Carrs formed Carr Enterprises, Inc. under South Dakota laws, ostensibly to avoid the South Dakota usury law limiting the interest rate on loans to individuals. The Carrs were soon thereafter involved in disputes with the Federal Government over the Carrs' income tax liabilities for 1972, 1973, 1974 and 1975. Gene Carr litigated his 1972 and 1973 tax liability in Tax Court. A deficiency was assessed for taxable year 1973 against Frances Carr, (who had not participated in the Tax Court Action) in February 1977. Internal Reve-

nue Service personnel attempted on a number of occasions beginning in late 1976 and continuing into June 1978 to examine the Carrs' financial records for 1974 and 1975, but with no real success. Deficiencies were assessed against Gene Carr in October, 1978 for the taxable years 1972 and 1973, following a May 25, 1978 Tax Court ruling adverse to Carr. Further deficiencies were assessed against both Carrs in March, 1979 for the taxable years 1974 and 1975.[2]

On May 29, 1978 the Carrs transferred their interest in the Buffalo Trail Motel, as well as their personal residence, to Carr Enterprises. At the same time, the motor vehicles owned by the Carrs were transferred to another corporation, D. C. Services Corporation, owned by the Carrs. The only consideration for these transfers was an issuance of stock by the corporations to the Carrs. On May 29, 1978, Gene Carr also transferred his majority stock in the two corporations to a church known as the Life Science Church, which appears to have been formed no earlier than May 25, 1978. Also on May 29, 1978, Gene Carr signed a printed form "vow of poverty" in connection with the formation of this church.[3] The three church "trustees", who signed an acceptance of the church charter on May 29, 1978, were Gene Carr, Frances Carr and a Donna J. Hiles. Gene Carr was ordained as a minister of this church on May 25, 1978, although he testified that both before and after this occurrence he was a practicing Roman Catholic.

The Government filed the tax liens here in question against the Carrs on July 2, 1979 (for the liabilities of both Carrs for taxable years 1974 and 1975) and on July 29, 1980 (for the liability of Frances Carr for taxable year 1973) in the office of the Tripp County Register of Deeds (the county in which the realty involved is situate).

---

1. The case was initiated by plaintiff in state court under SDCL 21–41–11 and 28 U.S.C. § 2410, and removed to this Court by defendant pursuant to 28 U.S.C. §§ 2410, 1444.

2. The deficiencies against both Carrs for 1974 and 1975 total approximately $110,000; the deficiency against Frances Carr for 1973 is approximately $1,500; the deficiencies against

Gene Carr for 1972 and 1973 are not material to this case.

3. The "vow of poverty" states, in part, that "I, Gene Carr ... [divest] myself of all my possessions and income whatsoever to be used for Religious purposes to support the basic Biblical law of the Church or Order hereinafter named."

## DISCUSSION

■ The first issue plaintiff raised is whether the assessment of tax deficiencies for 1974 and 1975 violated Gene and Frances Carrs' due process rights. Assuming without deciding that plaintiff has standing to urge this contention, it is evident that this argument is without merit. In plaintiff's amended complaint, it was contended that the Government had failed to make demand for deficiency "prior to the assessment and filing of the lien." *See* 26 U.S.C. § 6321: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property ... belonging to such person." While it is not entirely clear from the amended complaint which deficiency plaintiff challenges on this ground, it must be observed that Gene Carr testified at trial that several months after June 1978, he received a deficiency notice that disallowed all his deductions for 1974 and 1975. In view of this, it can hardly be contended that the Carrs did not receive a proper demand for the deficiencies for 1974 and 1975, and from the lack of argument on this point in plaintiff's post-trial brief, it must be assumed that plaintiff has conceded this point.

■ Plaintiff instead now argues that the conduct of the IRS agent assigned to audit the Carrs' records constituted a due process violation. It would serve no useful purpose here to trace the repeated attempts made by the IRS to examine the Carrs' records and Gene Carr's varied excuses why the records would not be made available, ultimately culminating in a minor confrontation between Gene Carr and an IRS agent on June 8, 1978 in Carr's office in Winner.[4] The burden was on Carr to show that he was entitled to the deductions he claimed, *Interstate Transit Lines v. Commissioner,*

319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943), and he was required under 26 U.S.C. §§ 6001, 7602 and relevant regulations, e.g. 26 C.F.R. § 1.6001–1(a), to maintain records and to make them available to the Government so that his tax liability could be determined. From the evidence presented at trial, the Court must find that Carr failed to properly make his records available, and that the Government's decision to assess deficiencies on this basis was therefore not arbitrary or lacking in due process.

■ Since plaintiff's argument that the federal tax liens were ineffective against the Buffalo Trail Motel is dependent on whether the Carrs' transfer of that property to plaintiff was a fraudulent conveyance, the Court will next address that question. SDCL 54–8–1 provides that "[e]very transfer of property ... made ... with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor." The question of fraudulent intent is, of course, one of fact, SDCL 54–8–4, and "may be established by circumstantial evidence." *First National Bank of Beresford v. Anderson,* 291 N.W.2d 444, 446 (S.D.1980). There is but one reasonable inference to be drawn from all the evidence presented at trial: that Gene and Frances Carr intended to defraud the Government in their transfer of property to the plaintiff. The Carrs, in May 1978, had been involved in a longstanding dispute with the Government over their tax liabilities, and had just, on May 2, 1978, agreed to allow the IRS to examine their 1974 and 1975 records, following more than a year of refusals to make these records available. The letter confirming this appointment also asked to see the Carrs' 1976 and 1977 income tax returns. A deficiency for 1973 had been assessed against Frances Carr in 1977; an adverse Tax Court opinion on Gene Carr's 1972 and 1973 liabilities was

---

4. Plaintiff seems to argue that Gene Carr was justified in refusing to give the IRS his 1974 and 1975 records until his Tax Court action involving 1972 and 1973 was concluded. Yet, in only one of the letters introduced into evidence in which Carr refuses to see an IRS agent, is this reason expressed—in the other letters, Carr says only that he does not have time.

issued on February 27, 1978, with the final decision being rendered on May 25, 1978.

Carr Enterprises had been in existence since 1975; yet, it was not until the month of May, 1978 that the Buffalo Trail Motel, along with the Carrs' personal residence, was transferred to the corporation. No clear business reason appears or has been advanced for the necessity of these transfers. At precisely the same time, the Carrs—despite their membership in the Roman Catholic Church—formed a "Life Science Church" with ·printed forms, Gene Carr signed a "vow of poverty", transferring his majority interest in Carr Enterprises to his new church, and became a minister in this church, although there is no indication that this church was ever anything but a paper entity. Despite the transfers, the Carrs, both as the sole owners of Carr Enterprises and the dominant members of the "Life Science Church", continued in control of the Buffalo Trail Motel, as well as in possession of the personal residence transferred to the corporation.

Plaintiff argues that the transfer of stock to the church is a distinct and separate transaction that cannot be considered on the question of whether the transfer of the motel to plaintiff was fraudulent, but for this Court to close its eyes to the existence of the church and the stock transfer to it would be "to exalt artifice above reality." *Gregory v. Helvering*, 293 U.S. 465, 470, 55 S.Ct. 266, 268, 79 L.Ed. 596 (1935). It takes no lengthy analysis to reach the conclusion that the facts recited above show that the Carrs realized in May 1978 their difficulties with the Government were quickly nearing a climax, and the Government would eventually attempt to collect the taxes owing to it. The Carrs therefore concocted a rather involved scheme to put their property beyond the reach of Government process, by first putting the bulk of their property in shell corporations, then by placing a majority of the stock in the corporations into a freshly formed "church". This Court cannot allow the Carrs to gain the benefit of these sham transfers. It is therefore found that the May 29, 1978 transfer of the Buffalo Trail Motel to plaintiff is declared a fraudulent conveyance within the meaning of SDCL 54–8–1, and therefore void as to the United States, and that the federal tax liens filed against the Carrs are valid against the disputed property.[5]

This memorandum opinion constitutes the findings of fact and conclusions of law of this Court.

---

5. Plaintiff argues that the Carrs must be shown to have been rendered insolvent by the transfer of the property to plaintiff for a fraudulent conveyance case to succeed. This contention is in error. SDCL 54–8–1 requires only fraudulent intent on the part of the debtor to make the transfer void as to the creditor, while SDCL 54 8 -10 declares that a conveyance made by a person who is thereby rendered insolvent is fraudulent "without regard to his actual intent." Since this Court has found actual intent to defraud on the part of the Carrs, it is unnecessary to reach the question of their solvency following the transfers. It is difficult to decipher the ultimate ruling in *Security National Bank of Sioux Falls v. Lowrie*, 59 S.D. 102, 238 N.W. 304 (1931), but it is clear that case does not, as plaintiff suggests, add the element of insolvency to SDCL 54–8–1. The Court in *Lowrie* seems to have merely disregarded the debtor's admissions of fraudulent intent because the transaction in dispute did not actually place his property beyond the reach of creditors. Even if insolvency were a necessary element, however, the Court is satisfied that Gene Carr's May 29, 1978 vow of poverty and admissions at trial that he has owned no property since the "vow" establishes insolvency as to him, and that Frances Carr's minority interest in the corporations—which, following the May 29, 1978 transfers, became her only substantial property—is essentially worthless and that her transfers in May, 1978 also rendered her insolvent.