**SFN SHAREHOLDERS GRANTOR TRUST, Successor in Interest to SFN Companies, Inc., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9109–TA–00049.

Tax Court of Indiana.

Nov. 13, 1992.

---

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Petitioner, SFN Shareholders Grantor Trust (SFN), the successor in interest to SFN Companies, Inc. (SFNCI), appeals the final determination by the Respondent, Indiana Department of State Revenue (the Department), assessing gross income tax on SFNCI's 1986 sale of shares in Scott, Foresman and Company (Scott Foresman). The case is before the court on SFN's motion for partial summary judgment.

## ISSUE [1]

I. Whether SFN's income from the sale of its Scott Foresman shares was derived from "sources within Indiana" within the meaning of IND.CODE 6–2.1–2–2(a)(2)?

## FACTS

The parties do not dispute the material facts. SFNCI, a Delaware corporation,

---

1. The only question not raised by SFN's motion is the request, contained in SFN's petition, for

was incorporated in 1979 and dissolved in 1986. Throughout its existence, SFNCI maintained its principal offices in Illinois and never owned property, solicited or conducted business, or had employees in Indiana. SFNCI was a holding company, maintaining a diverse portfolio of securities and debt instruments. During 1986, SFNCI owned all the shares of sixteen different corporations, including Scott Foresman. Additionally, two of SFNCI's Directors were the Directors of Scott Foresman.

Scott Foresman was and is a publisher, operating primarily in the educational textbook market. Originally incorporated in Illinois in 1896, Scott Foresman reincorporated in Delaware in 1969, but retained its principal place of business in Illinois. For several years prior to the 1986 transaction at issue, Scott Foresman held title to and operated a textbook warehouse in Pinola, Indiana. This Indiana warehouse was but one of many that Scott Foresman maintained throughout the United States, and over the ten year period ending December 31, 1986, it accounted for less than thirty percent (30%) of Scott Foresman's property, ten percent (10%) of its payroll, and four percent (4%) of its sales.

In 1986, SFNCI negotiated with Time Incorporated (Time) for the sale of the Scott Foresman shares. The parties negotiated, drafted, and executed the sale agreement exclusively in New York City and Chicago, with the help of lawyers and bankers from those two cities. The parties consummated the sale in New York on December 29, 1986, when Time paid SFNCI $520,000,000 for 100% of the Scott Foresman shares. At that time, the physical stock certificates were transferred to Time from a safety deposit box in suburban Chicago, where SFNCI had always kept them.

Neither the sale transaction nor any of its surrounding circumstances occurred in Indiana, and there was no separate sale or other transaction involving the Indiana warehouse. Immediately after the sale, SFNCI was dissolved, and SFN was formed to wrap up SFNCI's affairs. Scott Foresman continues to maintain the warehouse, operating as a subsidiary of Time, incorporated in Delaware and residing in Illinois.

The Department initially attempted to tax Scott Foresman on the proceeds of the sale, but rejected that course after determining that Scott Foresman received nothing from the sale. The Department thereafter proposed to tax SFN on the proceeds of the sale.[2] SFN protested, and following full administrative review, the Department denied the protest. After SFN filed its original tax appeal, this court, by agreement of the parties, enjoined collection of the tax. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I

When reviewing a motion for summary judgment, including a motion for partial summary judgment, the court is to grant the motion only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bethlehem Steel Corp. v. Indiana Department of State Revenue* (1992), Ind.Tax, 597 N.E.2d 1327, 1329; *Winona Memorial Foundation v. Lomax* (1984), Ind.App., 465 N.E.2d 731, 733, *trans. denied.* Because, as the parties agree, there is no genuine issue of material fact in this case, the dispositive question is whether Indiana can assess

costs and attorney fees under IND.CODE 34–1–32–1.

**2.** Applying concepts applicable to adjusted gross income taxation, the Department initially determined SFN's liability by multiplying SFN's net gain from the sale by Scott Foresman's 1986 Indiana adjusted gross income tax apportionment percentage under IND.CODE 6–3–2–2(b). Before the Department held a hearing on the protest, however, it issued a demand notice with

a new proposed assessment, determining the tax due by multiplying SFN's gross receipts from the sale by Scott Foresman's 1986 adjusted gross income tax property factor of 32.2% under IC 6–3–2–2(c).

Although SFN challenges the propriety of the Department's actions, the court's disposition of the case makes review of this question unnecessary.

gross income tax against SFN on the sale of the Scott Foresman shares.

## II

This appeal, like *Bethlehem Steel*, 597 N.E.2d 1327, *Indiana–Kentucky Electric Corp. v. Indiana Department of State Revenue* (1992), Ind.Tax, 598 N.E.2d 647, and *First National Leasing and Financial Corp. v. Indiana Department of State Revenue* (1992), Ind.Tax, 598 N.E.2d 640, before it, concerns the liability of a non-resident of Indiana for Indiana gross income tax. For non-residents, Indiana assesses gross income tax on the receipt of "the taxable gross income derived from activities or businesses or any other sources within Indiana." IC 6–2.1–2–2(a)(2).

In *Bethlehem Steel*, the court set out the three part inquiry to determine the taxability of a non-resident taxpayer under IC 6–2.1–2–2(a)(2): "(1) are the receipts 'gross income,' (2) is the 'gross income' derived from 'sources within Indiana,' and (3) is the 'gross income' that is derived from 'sources within Indiana' 'taxable gross income'?" *Id.* at 1330. Only if all these questions are answered affirmatively does the court consider any constitutional questions raised by the parties. *Id.* (quoting *Indiana Dep't of State Revenue v. J.C. Penney Co.* (1980), Ind.App., 412 N.E.2d 1246, 1252). Because the parties properly do not contest that the $520,000,000 fits squarely within the definition of "gross income" under IND.CODE 6–2.1–1–2, *see, e.g., Madding v. Indiana Dep't of State Revenue* (1971), 149 Ind. App. 74, 85–86, 270 N.E.2d 771, 777, the court first considers whether SFN's gross income on the sale of the Scott Foresman shares is derived from "sources within Indiana."

■ The parties agree the Scott Foresman shares were intangible personal property under 45 I.A.C. 1–1–51. As discussed in *Bethlehem Steel*, 45 I.A.C. 1–1–51 sets out two tests, the "business situs" test and the "commercial domicile" test, to determine whether income from an intangible has an Indiana source. *Bethlehem Steel*, 597 N.E.2d at 1334. Unless a taxpayer is commercially domiciled in Indiana, however, the "commercial domicile" test is irrelevant because the analysis under that test is then identical to the analysis under the "business situs" test. *Id.* at 1335 (quoting 45 I.A.C. 1–1–51). To impose tax under the "business situs" test, "(1) the taxpayer [must have] a 'business situs' in Indiana and (2) the intangible or the income therefrom [must be] connected with the business at the Indiana situs, *i.e.*, 'the intangible or the income derived therefrom [must] form[ ] an integral part of a business regularly conducted at a situs in Indiana.'" *Id.* (quoting 45 I.A.C. 1–1–51). Because it is beyond dispute that Indiana has never been the "commercial domicile" of either SFN or SFNCI, the question is simply whether SFNCI had a "business situs" in Indiana.

The Department argues SFNCI had a "business situs" in Indiana by virtue of Scott Foresman's Pinola warehouse and associated activities in Indiana. The Department's reasoning is based on two interrelated premises: first, that SFNCI's ownership of the Scott Foresman shares amounted to ownership of Scott Foresman's assets, and second, that the decisions of this court and the Indiana Supreme Court in *Hoosier Energy Rural Electric Cooperative, Inc. v. Indiana Department of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, *aff'd*, (1991), Ind., 572 N.E.2d 481, *cert. denied*, (1991), — U.S. —, 112 S.Ct. 337, 116 L.Ed.2d 277, establish a blanket state tax rule that the "business situs" of an intangible is the same as the "business situs" of a portion of the tangible property underlying the intangible. Although a taxpayer may establish a "business situs" by, among other things, using, occupying, or operating a warehouse, or by owning, leasing, renting, or operating real or personal income producing property within Indiana, 45 I.A.C. 1–1–49, SFNCI did not have an Indiana "business situs" under either theory espoused by the Department.

### A. *Ownership of Shares*

■ One of the hallmarks of Anglo-American corporate law is the status of the corporation as a distinct entity, an artificial

person separate from its shareholders, having the capacity to own property and to sue and be sued. *See, e.g., Department of Treasury v. Crowder* (1938), 214 Ind. 252, 15 N.E.2d 89; *Benson v. Warble* (1970), 146 Ind.App. 307, 255 N.E.2d 230; *Hart, Schaffner & Marx v. Campbell* (1942), 110 Ind.App. 312, 38 N.E.2d 895; 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* §§ 5, 7, 40 (rev. perm. ed. 1990). As our supreme court stated over half a century ago, "[t]he corporation is an independent legal entity, separate and distinct from its stockholders." *Crowder,* 214 Ind. at 254–55, 15 N.E.2d at 91. From this basic principle it follows that a corporation's "capital stock belongs to the corporation considered as a legal person; the shares are the property of the individual shareholders." *Id.* (quoting *Markle v. Burgess* (1911), 176 Ind. 25, 95 N.E. 308, 309). *See also United States v. Wallach* (2nd Cir.1991), 935 F.2d 445; *Sun Towers, Inc. v. Heckler* (5th Cir.1984), 725 F.2d 315, *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45; *Arkansas Iron and Metal Co. v. First Nat'l Bank* (1985), 16 Ark.App. 245, 701 S.W.2d 380; *Baker Divide Mining Co. v. Maxfield* (1948), 83 Cal.App.2d 241, 248, 188 P.2d 538, 542; *Darnell v. State* (1910), 174 Ind. 143, 153, 90 N.E. 769, 773, *aff'd* (1912), 226 U.S. 390, 33 S.Ct. 120, 57 L.Ed. 267; *Duncan v. Jones* (1983), Ind. App., 450 N.E.2d 1019, 1021; *Madding,* 149 Ind.App. at 84, 270 N.E.2d at 776–77; *Regal Ins. Co. v. Summit Guar. Corp.* (1982), Iowa, 324 N.W.2d 697; *Holsclaw v. Kenilworth Ins. Co.* (1982), Ky.App., 644 S.W.2d 353; *Phillips v. Wagner* (1985), La. App., 470 So.2d 262, *writ denied sub nom Wagner v. Wagner,* La., 474 So.2d 948; *Penn v. Penn* (1983), Mo.App., 655 S.W.2d 631; *Matter of Fontana D'Oro Foods, Inc.* (1985), 65 N.Y.2d 886, 493 N.Y.S.2d 300, 482 N.E.2d 1216; *City of Lorain v. Gel-Pak, Inc.* (1984), 20 Ohio App.3d 378, 486 N.E.2d 836; *McClory v. Schneider* (1932), Tex.Civ.App., 51 S.W.2d 738, 741. *See generally* 1, 11 W. Fletcher, *Cyclopedia of the Law of Private Corporations* §§ 31, 5100 (rev. perm eds. 1990 and 1986). Shareholders have a claim for their aliquot share of corporate assets only "*after* the debts and liabilities of the corporation have been satisfied and the assets have been distributed in liquidation." *Madding,* 149 Ind.App. at 84, 270 N.E.2d at 776–77 (citing *Rhode Island Hospital Trust Co. v. Doughton* (1926), 270 U.S. 69, 46 S.Ct. 256, 70 L.Ed. 475) (emphasis in original). Because of separate identity, shareholders simply are unable to sell corporate assets; they can sell only their shares. *Crowder,* 214 Ind. at 255, 15 N.E.2d at 91 (citing *Humphreys v. McKissock* (1891), 140 U.S. 304, 11 S.Ct. 779, 35 L.Ed. 473).

■ Contrary to the Department's assertion, the doctrine of separate corporate identity does not break down merely because a corporation is a subsidiary, even if it is wholly owned by its parent. *First Nat'l Leasing,* 598 N.E.2d at 645–46; 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 40 (rev. perm. ed. 1990). *See also Olympia Equip. Leasing Co. v. Western Union Tel. Co.* (7th Cir.1986), 786 F.2d 794, 798. Even a holding company, like SFNCI, does not own the assets of the corporations in which it holds shares; it owns only the shares. 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 31 (rev. perm. ed. 1990). *See also Benner–Coryell Lumber Co. v. Unemployment Compensation Bd.* (1940), 218 Ind. 20, 28, 29 N.E.2d 776, 780, *cert. denied* (1941), 312 U.S. 698, 61 S.Ct. 741, 85 L.Ed. 1132 (a corporation's status as a distinct entity "is unaffected by the fact that a majority of its stock may or may not be controlled by the same interests"); *Holsclaw,* 644 S.W.2d at 355 (sole shareholder cannot ignore corporate entity); *Penn,* 655 S.W.2d at 632 (sole shareholder owns only shares; title to corporate property remains in corporation). Outside the context of dissolution, the sale of 100% of a corporation's shares does not amount to a sale of assets. *McClory,* 51 S.W.2d at 741. Most important, the norms of corporate law do not disappear in tax cases, *see, e.g., Madding;* 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 40 (rev. perm. ed. 1990), and this court has made clear it will not lightly disregard corporate form, even in cases of close corporate relationship be-

tween a parent and a subsidiary. *First Nat'l Leasing*, 598 N.E.2d at 645–46 (separate corporate forms were respected when parent and subsidiary were owned by same family throughout existence, and shared services, headquarters, and officers).[3]

In the case at bar, SFNCI owned 100% of the shares in Scott Foresman, but this did not amount to ownership of Scott Foresman's assets. Scott Foresman owned the Pinola warehouse; SFNCI owned only the stock, and even though the two companies shared Directors, SFNCI had no rights in the warehouse or Scott Foresman's other capital assets. The Pinola warehouse was indeed an Indiana "business situs," but it was Scott Foresman's "business situs," not SFNCI's.

## B. *Hoosier Energy*

■ Switching emphasis from the warehouse to the shares, the Department next claims, on the basis of the *Hoosier Energy* decisions, that SFNCI had an Indiana "business situs" because the Scott Foresman shares were inextricably linked to the Pinola warehouse. In the *Hoosier Energy* cases, both this court and our supreme court held that the intangible federal tax benefits sold by the taxpayer in safe harbor leases had an Indiana "business situs" because the benefits "cannot exist separate and apart from the taxpayer and property which, with the aid of IRC § 168(f), created the intangible." *Hoosier Energy*, 572 N.E.2d at 485; *see also Hoosier Energy*, 528 N.E.2d at 872. Now, the Department argues the *Hoosier Energy* cases mandate a decision that the Scott Foresman shares had an Indiana business situs because they could not exist separate and apart from the warehouse. The court's decision in *Bethle-*

*hem Steel*, 597 N.E.2d at 1338, however, makes clear the Department reads too much into *Hoosier Energy*.

In *Bethlehem Steel*, 597 N.E.2d at 1338, the court definitively rejected the bright line test the Department seeks, refusing to hold that "the situs of an intangible follows the underlying tangible property." *Id.* Instead, the determination of "business situs" is a fact sensitive task. *Id.* at 1337.

In the present case, the facts point unerringly to the conclusion that the shares did not have an Indiana "business situs." As discussed above, SFNCI had neither its "commercial domicile" nor a "business situs" in Indiana. Indeed, SFNCI had no activities whatsoever in Indiana, whether related to the sale of the shares or otherwise. Additionally, the physical stock certificates were maintained outside of Indiana. *See* 45 I.A.C. 1–1–51 (physical location of an intangible is to be considered in light of all the facts presented). Finally, in both *Hoosier Energy* and *Bethlehem Steel*, the underlying tangible property was the *sine qua non* of the tax benefits' existence: had the taxpayers not owned the specific pieces of equipment, the Internal Revenue Code would not have allowed the benefits. In the case at bar, though, the causation so critical to the tax benefits is absent. As already discussed, shares of stock represent only the shareholders' rights to an "aliquot share of the corporate assets *after* the debts and liabilities of the corporation have been satisfied and the assets have been distributed in liquidation," *Madding*, 149 Ind.App. at 84, 270 N.E.2d at 776–77 (emphasis in original), and they are therefore not tied in any physical sense to all or any portion of their underlying tangi-

---

**3.** Of course, the corporate form will be disregarded both within and beyond the tax arena in certain circumstances, most often having to do with fraud. *See, e.g., Carr Enterprises v. United States* (D.S.D.1982), 539 F.Supp. 528, *aff'd*, (8th Cir.1983), 698 F.2d 952 (disregarding corporate entity created to shield shareholders from liability for federal tax liens); *Burger Man, Inc. v. Jordan Paper Prod., Inc.* (1976), 170 Ind.App. 295, 316, 352 N.E.2d 821, 834, *trans. denied* (debts of subsidiary attributed to parent to prevent fraud and injustice); 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 40

(rev perm. ed. 1990). Furthermore, as this court noted in *First National Leasing*, agency concepts have been held sufficient to pierce the corporate veil. *First Nat'l Leasing*, 598 N.E.2d at 646, n. 4.

In the present case, however, the Department makes no allegation the court ought to disregard the separate entities of SFNCI and Scott Foresman. Rather, the Department argues a stockholder, simply by virtue of being a stockholder, owns not only the stock it holds, but also the assets of the corporation in which it holds the stock.

ble property. If Scott Foresman had sold the Pinola warehouse, SFNCI would have still owned the shares and the rights those shares represented; after the sale, the shares would simply have represented SFNCI's aliquot claim to a different group of assets than before the sale.

Contrary to the Department's assertion, the *Hoosier Energy* decisions do not create "a single fact bright line test" tying intangibles to underlying tangible property. *Bethlehem Steel*, 597 N.E.2d at 1338. Indeed, given all the facts in the case at bar, the conclusion that Indiana was not the "business situs" of the Scott Foresman shares is inescapable.

## CONCLUSION

To levy gross income tax against a non-resident of Indiana, the non-resident must first have an Indiana "business situs." In the present case, SFNCI did not own Scott Foresman's Pinola warehouse, and therefore, although the warehouse was an Indiana "business situs," it was not an Indiana "business situs" for SFNCI. On the other hand, even though SFNCI owned the Scott Foresman shares, those shares did not have an Indiana "business situs."

Accordingly, the court finds SFNCI's gross income from the sale of the Scott Foresman shares was not derived from "sources within Indiana" as required by IC 6–2.1–2–2(a)(2). The court therefore GRANTS SFN's motion for partial summary judgment. Because the gross income was not derived from an Indiana source, the court does not decide whether it is "taxable gross income" under IND.CODE 6–2.1–1–13, or whether either the Commerce Clause or Fourteenth Amendment Due Process Clause of the United States Constitution bars imposition of tax on the gross income.