ATTORNEYS FOR PETITIONER:
**ANDREW B. HOWK**
**N. KENT SMITH**
HALL, RENDER, KILLIAN, HEATH &
LYMAN, P.C.
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**JEFFERSON S. GARN**
**WINSTON LIN**
**REBECCA L. McCLAIN**
**PARVINDER K. NIJJAR**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

ATTORNEYS FOR AMICI CURIAE
ASSOCIATION OF INDIANA
COUNTIES and WARRICK COUNTY
BOARD OF COMMISSIONERS:
**MARK E. GIAQUINTA**
**SARAH L. SCHREIBER**
HALLER & COLVIN, P.C.
Fort Wayne, IN

FILED
Nov 21 2019, 2:42 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| ST. MARY'S BUILDING CORPORATION, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 18T-TA-00013 |
| | ) |
| SARAH E. REDMAN, | ) |
| WARRICK COUNTY ASSESSOR, | ) |
| | ) |
| Respondent. | ) |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**November 21, 2019**

WENTWORTH, J.

Saint Mary's Building Corporation ("Building Corporation") has appealed the final

determination of the Indiana Board of Tax Review that denied its request for a property tax exemption for the 2014 and 2015 tax years. Upon review, the Court affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

The Building Corporation, an Indiana non-profit corporation,[1] owns the Epworth Crossing medical building located in Newburgh, Indiana. (See Cert. Admin. R. at 4385-86.) The Building Corporation maintains that its sole corporate member is St. Mary's Health, Inc., which owns and operates a hospital in Evansville, Indiana ("the Hospital"). (See Pet'r Br. at 6-8 (citing Cert. Admin. R. at 4302, 4365).)[2]

In May of both 2014 and 2015, the Building Corporation filed applications for exemption with the Warrick County Property Tax Assessment Board of Appeals ("PTABOA") seeking a charitable purposes exemption, an educational purposes exemption, and a religious purposes exemption for the portions of Epworth Crossing (as well as the personal property therein) that it leased to St. Mary's Breast Center, LLC, St. Mary's Medical Group, LLC, and St. Mary's Medical Center of Evansville, Inc. (See,

---

[1] In its brief, the Building Corporation states that it is "[an] Internal Revenue Code Section 501(c)(2) entity" and cites to pages 4350-51 and 4385-86 of the certified administrative record as support. (Pet'r Br. at 6.) None of those pages, however, supports such a finding. (See Cert. Admin. R. at 4350-51, 4385-86.)

[2] Page 4365 of the certified administrative record does not support a finding that the Building Corporation's sole corporate member is St. Mary's Health, Inc. (See Cert. Admin. R. at 4365.) Moreover, the Building Corporation's Articles of Incorporation state that its sole corporate member is Seton Health Corporation of Southern Indiana. (See Cert. Admin. R. at 4387-89.) While there may be an explanation that links Seton Health to St. Mary's Health, the Court declines to search the more than 5,000 page certified administrative record to find that explanation. See, e.g., Miller Pipeline Corp. v. Indiana Dep't of State Revenue, 995 N.E.2d 733, 736 nn. 2-4 (Ind. Tax Ct. 2013) (rejecting a litigant's attempt at "placing a stack of paperwork before the Court . . . to figure out for itself" the facts it conveys).

2

e.g., Cert. Admin. R. at 13-17, 121-25, 4286-88, 4529-31, 4537.) St. Mary's Breast Center used its leased space to operate a breast imaging and therapy center, St. Mary's Medical Group used its leased space to operate a primary care physician's practice, and St. Mary's Medical Center of Evansville used its leased space to operate both an urgent care and an imaging and laboratory center. (See Cert. Admin. R. at 4530, 4537.)[3] The Building Corporation's appeal documentation stated that "[t]he services [] offered within the[se] space[s are] in furtherance of the charitable, religious, and educational mission of each of the [tenants]. Services are offered at a reduced cost or free of charge depending upon the patient's ability to pay for the services." (Cert. Admin. R. at 4530.)

The PTABOA denied the exemption applications and the Building Corporation subsequently pursued an appeal with the Indiana Board. (See, e.g., Cert. Admin. R. at 1-3, 109-11.) In its appeal documentation, the Building Corporation stated it "delivers health care services in furtherance of its charitable, religious, and educational mission and in accordance with its charity care policy. [Thus, its] use of the property meets with the requirements of I.C. 6-1.1-10-16, including, in particular, subsection (h)[.]" (See, e.g., Cert. Admin. R. at 1-3, 109-11.) Furthermore, the Building Corporation indicated that it was a "wholly-owned affiliate" of the Hospital and that each of its three tenants was "owned and operated by [the Hospital] as [one of its] departments . . . or as

---

[3] During the administrative appeal, the Building Corporation asserted that 93% of the space in Epworth Crossing was entitled to an exemption; now, however, the Building Corporation contends that only 82% of the space is exempt. (Compare Cert. Admin. R. at 13, 121, 4537 with Pet'r Br. at 10-11.)

separate wholly-owned, not-for-profit 501(c)(3) entities."[4] (Cert. Admin. R. at 4248, 4253, 4255-56.)

On February 23, 2018, after reviewing the case on the parties' motions for summary judgment and the stipulated record, the Indiana Board denied the Building Corporation's exemption applications. In its final determination, the Indiana Board "concluded as a matter of law" that Epworth Crossing was owned, occupied, and used by the Hospital. (See Cert. Admin. R. at 5123-24 ¶ 8, 5147 ¶ 66.) Nonetheless, it found that Epworth Crossing did not qualify for an exemption under Indiana Code § 6-1.1-10-16(h) because the Building Corporation failed to show 1) how the operations at Epworth Crossing actually supported the Hospital's inpatient facility or 2) that the provision of charity care and community benefits was the predominant use of Epworth Crossing. (See Cert. Admin. R. at 5147-51 ¶¶ 66-74.) Alternatively, the Indiana Board concluded that Epworth Crossing did not "independently" qualify for an exemption under Indiana Code § 6-1.1-10-16(a) because it "operate[d] on a fee-for-service basis, with an indeterminate impact on the poor, uninsured, or underinsured. There is no evidence that Epworth Crossing satisfies a particular need in the community that would otherwise be unmet or fall to the government." (Cert. Admin. R. at 5151 ¶ 75.) The Indiana Board arrived at this conclusion, in part, because

> [the Building Corporation's] brief offer[ed] a disjointed parade of generalizations rather than a methodic explanation of the charity provided . . . The Board notes that "[c]onclusory statements do not constitute probative evidence." . . . Overall, [the Building Corporation] did little in its brief to sift through the evidence and present a

---

[4] As evidence that the three tenants were operated as Hospital departments, the Building Corporation presented the Hospital's license that merely referenced "off premise locations." (See, e.g., Cert. Admin. R. at 4255-56, 4532-4535.) Additionally, the Court notes that the license was effective July of 2016 through June of 2017 – years well beyond those at issue. (See, e.g., Cert. Admin. R. at 4532-4535.)

comprehensive, or even accurate, summation of the evidence.

(Cert. Admin. R. at 5132-33 ¶ 30 (citations omitted).) (See also, e.g., Cert. Admin. R. at 5130 ¶ 24 n.7; 5131 ¶ 26 n.9; 5135 ¶ 39 n.14; 5136-37 ¶¶ 43, 45 nn.17 & 18; 5138 ¶ 47 n.19 (all indicating instances in its final determination where the Indiana Board admonished the Building Corporation for citing to evidence that only "vaguely" supported its propositions, not providing evidentiary support at all, not walking the Indiana Board through its evidence and analysis, an overall lack of attention to detail, and carelessness in its briefing citation).

On April 9, 2018, the Building Corporation initiated this original tax appeal. After filing the appeal, the Building Corporation abandoned its claims for both the educational purposes exemption and the religious purposes exemption, pursuing only its charitable purposes exemption claim. (See Pet'r Br. at 15; Oral Argument Tr. at 3-5.) On March 15, 2019, the Court conducted oral argument on the matter. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Consequently, the Building Corporation must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence. IND. CODE § 33-26-6-

5

6(e)(1)-(5) (2019).

## LAW

In Indiana, all tangible property is subject to taxation. IND. CODE § 6-1.1-2-1 (2014). Nevertheless, the Indiana Constitution provides that the Legislature may exempt certain categories of property from taxation. See IND. CONST. art X, § 1. Pursuant to that grant of authority, the Legislature enacted Indiana Code § 6-1.1-10-16, which pertains to property used for, among other things, "charitable purposes." See generally IND. CODE § 6-1.1-10-16 (2014).

### Indiana Code § 6-1.1-10-16(a)

Under Indiana Code § 6-1.1-10-16(a), "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and used [ ] for . . . charitable purposes." I.C. § 6-1.1-10-16(a). This exemption also generally extends to the land on which an exempt building is situated, as well as the personal property that is contained therein. See I.C. § 6-1.1-10-16(c), (e).

A charitable purpose will be found to exist when "1) there is evidence of relief of human want . . . manifested by obviously charitable acts different from the everyday purposes and activities of man in general; and 2) there is an expectation of a benefit that will inure to the public by the accomplishment of such acts." Hamilton Cty. Assessor v. SPD Realty, LLC, 9 N.E.3d 773, 775 (Ind. Tax Ct. 2014) (internal quotation marks omitted). "Indiana Code § 6-1.1-10-16 requires the showing of a charitable purpose to ensure that the benefit conferred by the exemption both relieves the government of a cost that it would otherwise bear and does not primarily serve a commercial profit motive." Id. See also Starke Cty. Assessor v. Porter-Starke Servs.,

6

Inc., 88 N.E.3d 814, 819 (Ind. Tax Ct. 2017) (explaining that a private organization provides a public benefit when it "takes on a task that would otherwise fall to the government, [as] this provides a benefit to the community as a whole because it allows the government to direct its funds and attention to other community needs"); College Corner, L.P. v. Dep't of Local Gov't Fin., 840 N.E.2d 905, 908 (Ind. Tax Ct. 2006) (explaining that the taxpayer bears the burden of proving that it is entitled to the exemption it seeks); Indianapolis Osteopathic Hosp., Inc. v. Indiana Dep't of Local Gov't Fin., 818 N.E.2d 1009, 1014 (Ind. Tax Ct. 2004) (stating that an exemption is strictly construed against the taxpayer and in favor of the State because it releases property from the obligation of bearing its fair share of the cost of government and serves to disturb the equality and distribution of the common burden of government upon all property), review denied.

Under Indiana Code § 6-1.1-10-16, the Legislature does not require unity of ownership, occupation, and use to reside with a single entity. Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs, 686 N.E.2d 954, 959 (Ind. Tax Ct. 1997), review denied. Instead, as long as property is owned for a charitable purpose, occupied for a charitable purpose, and used for a charitable purpose "regardless of by whom," the property can be exempt from taxation. Id. (emphasis added).

The Legislature requires, however, that when a property is occupied and used for both exempt and non-exempt purposes, its occupation and use for exempt purposes must be predominate. See IND. CODE § 6-1.1-10-36.3 (2014). Property is predominately used for a charitable purpose "if it is used or occupied for [a charitable purpose] during more than fifty percent (50%) of the time that it is used or occupied in

7

the year that ends on the assessment date of the property." I.C. § 6-1.1-10-36.3(a).

"Accordingly, the statutory predominant use test focuses on the amount of time that property was used for exempt purposes in relation to its total usage." Hamilton Cty. Assessor v. Duke, 69 N.E.3d 567, 570 (Ind. Tax Ct. 2017) (citing I.C. § 6-1.1-10-36(a); State Bd. of Tax Comm'rs v. New Castle Lodge #147, Loyal Order of Moose, Inc., 765 N.E.2d 1257, 1262-63 (Ind. 2002)), review denied.

## Indiana Code § 6-1.1-10-16(h)

"Generally, 'hospitals maintained, not for pecuniary profit, but to relieve the destitute and deserving, are [] classed as [] charit[able].'" Indianapolis Osteopathic Hosp., 818 N.E.2d at 1015 (quoting St. Vincent's Hosp. v. Stine, 144 N.E. 537, 539 (Ind. 1924), rev'd in part on other grounds by 237 N.E.2d 242 (Ind. 1968)). Nonetheless, if an exempt hospital owns other property, that other property does not automatically receive a charitable purposes exemption. Id. Indeed, Indiana Code § 6-1.1-10-16(h) explains that:

> [Indiana Code § 6-1.1-10-16] does not exempt from property tax an office of a practice of a physician or group of physicians that is owned by a hospital licensed under IC 16-21-2 or other property that is not substantially related to or supportive of the inpatient facility of the hospital unless the office, practice, or other property:
>
> > (1) provides or supports the provision of charity care (as defined in IC 16-18-2-52.5), including providing funds or other financial support for health care services for individuals who are indigent (as defined in IC 16-18-2-52.5(b) and IC 16-18-1-52.5(c)); or
> >
> > (2) provides or supports the provision of community benefits (as defined in IC 16-21-9-1), including research, education, or government sponsored indigent health care (as defined in IC 16-21-9-2).

8

> However, participation in the Medicaid or Medicare program alone does not entitle an office, practice, or other property described in this subsection to an exemption under [Indiana Code § 6-1.1-10-6].

IND. CODE § 6-1.1-10-16(h) (2014).

## DISCUSSION AND ANALYSIS

On appeal, the Building Corporation contends that the Indiana Board's final determination must be reversed because it is both contrary to law and against the weight of the evidence. (See generally Pet'r Br. at 17, 25-26; Oral Arg. Tr. at 5.) Specifically, the Building Corporation asserts that the Indiana Board 1) improperly evaluated its exemption request under Indiana Code § 6-1.1-10-16(h) and 2) ignored its evidence that clearly demonstrated Epworth Crossing qualified for a charitable purposes exemption under Indiana Code § 6-1.1-10-16(a). (See generally Pet'r Br. at 17, 25-26; Oral Arg. Tr. at 5.)

### 1. Indiana Code § 6-1.1-10-16(h)

The majority of the analysis contained in the Indiana Board's final determination was devoted to examining Epworth Crossing's eligibility for a charitable purposes exemption under Indiana Code § 6-1.1-10-16(h). (See, e.g., Cert. Admin. R. at 5140-52 ¶¶ 52-77 (indicating that the final determination's "Conclusions of Law" section consisted of 26 paragraphs: 7 provided general statements of law, 7 analyzed Epworth Crossing's eligibility for a religious purposes exemption, 1 analyzed Epworth Crossing's eligibility for an educational purposes exemption, 9 analyzed Epworth Crossing's eligibility for a charitable purposes exemption under Indiana Code § 6-1.1-10-16(h), 1 analyzed Epworth Crossing's eligibility for a charitable purposes exemption under Indiana Code § 6-1.1-10-16(a), and 1 discussed an unrelated matter).) The exemption

9

provided for in Indiana Code § 6-1.1-10-16(h), however, applies to property that is owned by an otherwise exempt hospital. See supra pages 8-9. Thus, in order to analyze Epworth Crossing's eligibility for an exemption under Indiana Code § 6-1.1-10-16(h), the Indiana Board first had to determine that Epworth Crossing was in fact owned by an exempt hospital.

In its final determination, the Indiana Board stated that it "conclude[d] as a matter of law" that Epworth Crossing (and the personal property used therein) was owned, occupied, and used by the Hospital. (Cert. Admin. R. at 5147 ¶ 66.) The Indiana Board's conclusion appears to be based solely on the Building Corporation's contention that it, along with "the Breast Center, and the Medical Group, and the overall management of Epworth C[rossing], are controlled by the Hospital and operated as departments of the Hospital." (See Cert. Admin. R. at 5147 ¶ 66 (emphases added).) (See also, e.g., Cert. Admin. R. at 5130 ¶ 23 (stating that the Building Corporation "steadfastly claims that all of the space for which it seeks an exemption is 'owned and operated by [the Hospital] as departments of the inpatient hospital or as separate, wholly owned not-for-profit 501(c)(3) entities' that are departments of the 'inpatient facility[]'").) Notwithstanding having made that contention, the Building Corporation now argues on appeal that the Indiana Board's entire Indiana Code § 6-1.1-10-16(h) analysis is misplaced because the Building Corporation – not the Hospital – owned Epworth Crossing.[5] (See Pet'r Br. at 16, 25-29.) The Court agrees.

---

[5] Of course, this begs the question why the Building Corporation sought the exemption under Indiana Code § 6-1.1-10-16(h) in the first place. As Amici Curiae asserts, to the extent the Building Corporation "conveniently ignores its own Petition and filings before the [Indiana Board] which invoked the terms of Section 16(h) . . . it could have saved the [Indiana Board] a lot of time" had it not sent the Indiana Board down that rabbit hole. (Amicus Br. Resp. Pet'r Br. at 25-27.)

This Court has previously explained that one of the hallmarks of Anglo-American law is the status of the corporation as a distinct legal entity. SFN Shareholders Grantor Tr. v. Indiana Dep't of State Revenue, 603 N.E.2d 194, 197-98 (Ind. Tax Ct. 1992). Indeed, for purposes of taxation, a corporation is an independent legal entity, separate and distinct from its shareholders, affiliates, corporate members, parents, and subsidiaries. Id. See also First Nat'l Leasing & Fin. Corp. v. Indiana Dep't of State Revenue, 598 N.E.2d 640, 645 (Ind. Tax Ct. 1992). The certified administrative record in this case contains discrete corporate formation documents for both the Building Corporation and the Hospital. (See, e.g., Cert. Admin. R. at 788-824, 825-833, 2248-73, 2292-2328, 2451-2479, 2480-2510.) Consequently, their separate corporate identities cannot be disregarded, even if they are closely related entities. See SFN, 603 N.E.2d at 198; First Nat'l Leasing, 598 N.E.2d at 645. Moreover, the Court notes that the Indiana Board's final determination provides no citation to any law whatsoever to support its "legal conclusion" that Epworth Crossing was owned by the Hospital. (See, e.g., Cert. Admin. R. at 5130-32 ¶¶ 23-28, 5145-47 ¶¶ 62-66.)

Here, the Indiana Board acted contrary to law when it ignored the evidence of the Building Corporation's and the Hospital's individual corporate identities and concluded for purposes of property taxation that they were essentially "one in the same." Despite that error, the Indiana Board's ultimate legal conclusion – that Epworth Crossing did not qualify for an exemption under Indiana Code § 6-1.1-10-16(h) – is not contrary to law and is supported by evidence in the certified administrative record. As a result, the Court will not reverse that holding.

11

## 2. Indiana Code § 6-1.1-10-16(a)

The Building Corporation also claims on appeal that the Indiana Board's final determination denying Epworth Crossing the charitable purposes exemption under Indiana Code § 6-1.1-10-16(a) is against the weight of the evidence and must be reversed. More specifically, the Building Corporation refers the Court to certain evidence in the administrative record to support findings that: a) the provision of healthcare without regard to a patient's ability to pay constitutes a charitable purpose; b) Epworth Crossing was owned, occupied, and used for that charitable purpose; and c) Epworth Crossing was used exclusively for that purpose. (See generally Pet'r Br. at 17-24.)

### a)

At the outset, the Building Corporation contends that "[p]roviding healthcare to a community regardless of patients' abilities to pay is a well-settled charitable purpose." (Pet'r Br. at 17-18 (citing Indianapolis Osteopathic Hosp., 818 N.E.2d at 1015).) The Building Corporation then concludes that both it and Epworth Crossing fall "squarely within" the confines of that charitable purpose because its evidence shows that: 1) the Building Corporation is a nonprofit corporation; 2) the Building Corporation, the Hospital, and each of Epworth Crossing's three tenants "exist only to pursue their common charitable purpose and mission rather than maximizing shareholders' returns . . . [because none of them] have any shareholders"; and 3) "[a]ny revenues that exceed expenses are redistributed back into the operations of each nonprofit corporation so that each may continue furthering its mission of providing healthcare." (Pet'r Br. at 18-19

12

(citing Cert. Admin. R. at 1191-93[6]).)

As previously noted, Indianapolis Osteopathic states that hospitals maintained not for pecuniary profit, but "to relieve the destitute and deserving" are generally deemed as having a charitable purpose. Indianapolis Osteopathic Hosp., 818 N.E.2d at 1015. But to read that case, as the Building Corporation has, as establishing a per se exemption that applies here misinterprets the case.

This Court's jurisprudence is clear: the charitable purposes exemption is not susceptible to bright-line tests or other abbreviated inquiries, and each exemption request stands on its own facts. See, e.g., Jamestown Homes of Mishawaka, Inc. v. St. Joseph Cty. Assessor, 914 N.E.2d 13, 15 (Ind. Tax Ct. 2009), review denied. A charitable purpose will be found to exist only when a taxpayer provides evidence to the Indiana Board that shows 1) relief of human want manifested by obviously charitable acts different from the everyday purposes and activities of man in general and 2) a benefit sufficient to justify the loss of tax revenue inures to the public through its acts. SPD Realty, 9 N.E.3d at 775.

To that end, Epworth Crossing's entitlement to the charitable purposes exemption is not demonstrated through the 501(c)(3) statuses of its owner and/or its tenants. Indeed, as early as 1879, the Indiana Supreme Court explained that a property's exempt status was tied to its use, and not to any status bestowed upon its owner. State ex rel. Tieman v. City of Indianapolis, 69 Ind. 375, 376 (1879) (explaining

---

[6] Pages 1191 through 1193 of the certified administrative record reflect the testimonial statements of John Zabrowski that 1) "St. Mary's Health does not distribute income"; 2) "[St. Mary's Health] do[es] not have shareholders"; and 3) if St. Mary's Health had any income that exceeded expenses, "[i]t's reinvested in the operation." (Cert. Admin. R. at 1191-93.) (See also Cert. Admin. R. at 1189 (identifying Zabrowski as the Hospital's CFO).)

13

that Article X, § 1 of the Indiana Constitution clearly "contemplates the character and purpose of the property that may be exempted from taxation, not the character and purpose of the owner of the property"). That principle has, in turn, been repeatedly recognized in this Court's own body of law. See, e.g., Indianapolis Osteopathic Hosp., 818 N.E.2d at 1015-19 (applying the "predominant use test" to determine whether the subject property was exempt from taxation); Sangralea Boys Fund, 686 N.E.2d at 959 (stating that "a property's exempt status is tied to its use"); Lincoln Hills Dev. Corp. v. State Bd. of Tax Comm'rs, 521 N.E.2d 1360, 1361 (Ind. Tax Ct. 1988) (holding that a corporation's not-for-profit status does not automatically qualify its property for an exemption under Indiana Code § 6-1.1-10-16).

b)

Next, the Building Corporation claims that it has provided evidence that demonstrates that each of the entities involved in owning, occupying, and using Epworth Crossing (i.e., the Building Corporation and the property's three tenants) has its own exempt charitable purpose. (See Pet'r Br. at 19 (stating simply that "[e]ach of the[] entities shares the same charitable purpose as required under their Articles of Incorporation and Bylaws as well as their 501(c)(3) or 501(c)(2) statuses").) To support its claim, the Building Corporation refers the Court to pages 1416-17, 4350-4351, and 4385-86 of the administrative record. (See Pet'r Br. at 19.)

Upon review, the Court finds that none of this cited evidence demonstrates how the Building Corporation and the three tenants use Epworth Crossing to 1) relieve human want through charitable acts different from the everyday purposes and activities of man in general and 2) confer a public benefit sufficient to justify the loss of tax

14

revenue.    Indeed, pages 1416 and 1417 of the administrative record provide the following testimonial statement of John Zabrowski, the Hospital's CFO:

> The evidence that[ we've] presented with respect to St. Mary's Epworth Crossing deserving a property tax exemption I believe has been provided consistently throughout this process.  It includes the fact that it is a part of St. Mary's Health, a 501(c)(3) tax exempt organization that's organized for religious and charitable healthcare.  We provide services to all who come regardless of the ability to pay.  We honor our ministry of the church throughout that site location.  We provide community benefit at that site location.  It is literally integrated into the existing St. Mary's Medical Center, as it's a department with the hospital organization.  And the services provided at that site absolutely help to facilitate the well-being and care delivered throughout St. Mary's Health.

(Cert. Admin. R. at 1416-17.)  Testimonial statements that are conclusory in nature do not constitute probative evidence.  See, e.g., Marinov v. Tippecanoe Cty. Assessor, 119 N.E.3d 1152, 1156 (Ind. Tax Ct. 2019).  Pages 4350-4351 and 4385-86 of the administrative record are simply the two-page photocopies of the "Articles of Amendment" to the articles of incorporation of St. Mary's Medical Center of Evansville and the Building Corporation.  (See Cert. Admin. R. at 4350-51, 4385-86.)  Without any further explanation from the Building Corporation, the Court does not find these basic documents probative of its charitable purpose.

In order to prove Epworth Crossing's entitlement to the charitable purposes exemption, the Building Corporation must have provided not only evidence that meets every element of that exemption, but also walked both the Indiana Board and this Court through every element of its analysis.  See Duke, 69 N.E.3d at 570; Clark v. Dep't of Local Gov't Fin., 779 N.E.2d 1277, 1282 n. 4 (Ind. Tax Ct. 2002).  As indicated earlier, the Indiana Board complained that the Building Corporation's evidentiary presentation was "a disjointed parade of generalizations rather than a methodic explanation of the

15

charity provided" that reflected its failure "to sift through the evidence and present a comprehensive, or even accurate, summation of the evidence." (See Cert. Admin. R. at 5132-33 ¶ 30 (citations omitted).) The Building Corporation's presentation to the Court simply is more of the same.

c)

The Building Corporation argues that Epworth Crossing qualifies for the charitable purposes exemption because it "is used for a single purpose, 100% of the time: providing healthcare to anyone that needs it – rather than for a profit." (Pet'r Br. at 20.) Its evidence, however, must demonstrate how it and its tenants use Epworth Crossing to 1) relieve human want through charitable acts different from the everyday purposes and activities of man in general and 2) confer a public benefit sufficient to justify the loss of tax revenue. See SPD Realty, 9 N.E.3d at 775.

The Building Corporation first refers the Court to pages 1198-99, 1206, 1326-30, 1601, 1608, 1723, and 4533-35 of the administrative record. (See Pet'r Br. at 19-22.) None of this cited evidence makes this showing. (See Cert. Admin. R. at 1198-99 (Zabrowski's statement that St. Mary's Medical Group, the tenant that operated a primary care physician's practice at Epworth Crossing, "operated at a loss"), 1205-06 (Zabrowski's statement that the urgent care and physician's practice operated at a loss during the years at issue, but the breast center and the imaging lab operated at a profit), 1326-30 (Zabrowski's testimony identifying balance sheets for purpose of "Respondent's Exhibits 17 and 18"), 1601 (deposition testimony of Kathy Hall, Hospital vice president and regional administrator, indicating that the breast center was formerly located on the Hospital campus before moving to Epworth Crossing), 1608 (Hall's

testimony that all of St. Mary's breast services were done at Epworth Crossing, unless they involved surgery), 1723 (Hall expressing her "concern" that if Epworth Crossing did not provide physician or lab services "there would be patient needs unmet in the community"), 4533-35 (2017 letter from Indiana State Department of Health acknowledging the change of name from St. Vincent Evansville to St. Mary's Health d/b/a St. Vincent Evansville).) Instead, this evidence merely showcases the good deeds done without explaining how they constitute charitable purposes under Indiana Code § 6-1.1-10-16(a).

The Building Corporation also refers the Court to its "Charity Care and Community Benefit Data," found at pages 4557 through 4559 of the administrative record, arguing that it clearly demonstrates that Epworth Crossing is entitled to the charitable purposes exemption because "for the three fiscal years on appeal, [it] provided over $11 million in uncompensated care[.]"[7] (Pet'r Br. at 23 (citing Cert. Admin. R. at 4557-59).) Nonetheless, the Court does not find this evidence persuasive for two reasons.

First, the Building Corporation's Data indicates that nearly half a million of the $11.8 million of "uncompensated care" is attributable to an entity, St. Mary's at Home, Inc., that leases space in Epworth Crossing and for which the Building Corporation does not seek an exemption. (Compare Pet'r Br. at 10-11 (citing Cert. Admin. R. at 4537) with Cert. Admin. R. at 4557-59.) Also, of the remaining $11.3 million, $11.0 million is

---

[7] Only two tax years – 2014 and 2015 – are at issue in this appeal. (Compare Cert. Admin. R. at 5120 (indicating that the Indiana Board's final determination dealt with the 2014 and 2015 assessments) with 5141 ¶ 54 n.20 (indicating, however, that the Indiana Board considered certain evidence from 2013 through 2016 because an assessment year and the Building Corporation's fiscal year are not "directly aligned").)

17

attributable to bad debt and unreimbursed Medicare/Medicaid costs.[8]  (See Cert. Admin. R. at 4557-59.)  The Building Corporation defines "bad debt" as "the cost of providing care, services or procedures to patients who have failed to pay, in whole or in part, for the care, services or procedures provided[.]"  (See Cert. Admin. R. at 4557-59.) The Building Corporation defines unreimbursed Medicare/Medicaid costs as just that: "the unreimbursed cost . . . of providing care, services or procedures to Medicaid or Medicare patients, as the case may be."  (See Cert. Admin. R. at 4557-59.)  Without any more explanation about how this financial data demonstrates a charitable purpose however, the Court simply cannot find that the Indiana Board erred when it concluded that this Data "relate[d] more to the collectability of a debt than [to any] charitable intent" or purpose.  (See Cert. Admin. R. at 5134 ¶ 34.)

Finally, the Building Corporation's Data does not show that the leased space at issue at Epworth Crossing was used more than 50% of the time (i.e., predominately) to provide "charity health care."  (See Cert. Admin. R. at 4557-59.)  The Building Corporation has acknowledged repeatedly that every patient that walks in Epworth Crossing's doors is treated, some pay and some do not.  (See, e.g., Cert. Admin. R. at 1665-66, 1723-24; Pet'r Br. at 23.)  Nonetheless, the Building Corporation's Data suggests only that Epworth Crossing may have been used to provide some charitable health care services, not what amount of those services are charity care.  Based on this evidence, the Indiana Board did not err in denying Epworth Crossing the charitable purposes exemption.  See New Castle Lodge #147, 765 N.E.2d at 1264 (indicating that

---

[8] The Building Corporation claimed during oral argument that its uncompensated care numbers did not include bad debt, but comparing the Building Corporation's evidence and doing the arithmetic shows they clearly do.  (Compare Oral Arg. Tr. at 14-16 with Cert. Admin. R. at 4557-59.)

the Indiana Board is "fully justified in placing the onus on taxpayers to produce facility usage reports in great[] detail [ ] with [ ] supporting documentation" when seeking a property tax exemption).

## CONCLUSION

In its appeal presentation, the Building Corporation has directed the Court to generalizations, conclusory statements, and inaccurate citations to the administrative record. The Building Corporation has not directed the Court to any evidence that demonstrates how, through its use, the Epworth Crossing property relieves human want through charitable acts different from the everyday purposes and activities of man in general or relieves the government of a cost that it would otherwise bear. Accordingly, the Court will not reverse the Indiana Board's final determination that Epworth Crossing did not qualify for a charitable purposes exemption under either Indiana Code § 6-1.1-10-16(h) or Indiana Code § 6-1.1-10-16(a) during the years at issue. The Indiana Board's final determination is therefore AFFIRMED.

19